J-S16033-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| IN THE INTEREST OF: D.J.C., A MINOR | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | |
| APPEAL OF: C.C., FATHER | |
| | No. 1794 MDA 2014 |

Appeal from the Decree September 29, 2014
In the Court of Common Pleas of Lancaster County
Orphans' Court at No(s): 1370 of 2014

BEFORE:  PANELLA, J., OLSON, J., and OTT, J.

MEMORANDUM BY OTT, J.:                    **FILED APRIL 17, 2015**

C.C. ("Father") appeals the decree entered September 29, 2014, in the Lancaster County Court of Common Pleas, involuntarily terminating his parental rights to his son, D.J.C. ("Child"), born in May of 2011.[1]  On appeal, Father argues the trial court erred in finding Lancaster County Children and Youth Services ("CYS") met its burden of proving termination of his parental rights was warranted pursuant to 23 Pa.C.S. § 2511(a)(1), (2), (5), (8) and (b).  For the reasons that follow, we affirm.[2]

---

[1]  By the same decree, the orphans' court involuntarily terminated the parental rights of Child's mother, A.W. ("Mother"), not only to Child, but also to his half-sister.  Mother did not file a notice of appeal.

[2]  Although the record and the November 16, 2014, opinion sur appeal identify the parties by their full names, "we will identify the parties in both
*(Footnote Continued Next Page)*

On July 3, 2014, CYS filed a petition to terminate the parental rights of Father to Child. A preliminary decree was issued the same day, scheduling a hearing for August 11, 2014. The hearing was continued and then held on September 29, 2014. The underlying factual history was taken from the September termination proceeding, which is set forth as follows:

[Child] was born [in May of 2011]. The history of his involvement with the Lancaster County Children and Youth Service Agency (Agency) goes back to 2012, after the Agency received a report concerning drug use by Father and [Child]'s mother, [A.W.] (Mother). Although the caseworker found Mother and Father to be drug free on a first visit, reports continued to be received by the Agency, and Mother refused to discuss these reports with the caseworker. On November 9, 2012, Father tested positive for opiates at a probation appointment. Mother, who had accompanied him, tested positive also and admitted to heroin use. The Agency put a safety plan in place. In February of 2013, Mother, who had not maintained consistent contact with the Agency, was in danger of eviction and had welfare fraud charges pending. She was not complying with the safety plan. Father, who had been imprisoned from November 9, 2012, to March 20, 2013, and from September 4, 2013 to October 9, 2013, was again in jail as of September 17, 2014 for two pending theft charges and a probation violation. He has a criminal history consisting of burglary, theft by unlawful taking and drug possession. There are outstanding warrants for his arrest in Tennessee and in Florida, where the county child services had taken his other two children, of whom he has never regained custody. He was indicated for physical abuse against his sister in 1998.

Since Mother was uncooperative with the Agency and Father was in prison at the beginning of 2013, the Agency decided to remove [Child] and his sibling[, K.E.S., ("Sister")] from their home. Physical custody of [Child] was taken on

_(Footnote Continued)_ ——————————

the caption and in this memorandum by their initials to preserve their privacy." **E.W. v. T.S.**, 916 A.2d 1197, 1199 n.1 (Pa. Super. 2007).

February 25, 2013; he was found to be dependent and legal custody was obtained on March 11, 2013 by court order. [Child], was placed with his paternal aunt and uncle, where he remains. [Sister] was placed with him[.]

Both parents were given permanency plans with a goal of reunification, but neither completed his or her plan. Father never completed his mental health goal. He has not remained free from drugs and misuse of alcohol. His case with Family Alternatives was closed because he failed to make a required contact with the organization. He has not remained crime free, has been in prison three separate times, and has had four probation violations. He will have two additional years of probation after he is released from his latest incarceration. He has not completed his goal of remaining free from domestic violence. He has not completed his goal of learning and using good parenting skills; he did not start the program prior to his incarceration and is not in a position to do so without a positive recommendation from both the mental health and the drug and alcohol treatment providers. His goal of being financially stable is incomplete because of his incarceration, and the outstanding warrants in Florida and Tennessee make him ineligible for work release. As for his goal of commitment to his child, while not in prison he attended five visits with [Child]. The visits went well. While incarcerated, he wrote to the caseworker several times to inquire about the child's status. He never wrote directly to [Child] or sent him anything, and testified at [the] hearing that no one ever told him he could do so and his mother thought that it would be better if he did not.

Upon being released from prison, he will be working at a Halfway house for at least three months. He told the court that he believed he would then be able to provide appropriate care for the children, just like he did after his prior releases from prison.

[Child] is doing very well with his aunt and uncle. His sister … also lives in the household with him. He is attending Head Start and fits in well with the family, which is a permanent resource for him.

Opinion Sur Appeal, 11/16/2014, at 1-3 (footnotes and record citations omitted).

A decree was issued the same day as the hearing, terminating Father's parental rights to Child. Father timely filed a notice of appeal and a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i).

On appeal, Father presents two issues:

I.    Did the Court err and abuse its discretion in terminating the parental rights of Appellant Father in that the Appellant Father was incarcerated during a significant period of time during the pendency of the underlying juvenile dependency action, but Appellant Father nevertheless utilized the resources available to him in continuing a relationship with his child, as Appellant Father forwarded written correspondence to the Children and Youth Agency case worker that inquired about the well being his child?

II.   Did the Court err and abuse its discretion in terminating the rights of the Appellant Father, as termination of his parental rights is not in the best interests of the child and will not promote the physical, mental, or emotional well being of the child, as the Appellant Father will in the near future be released from prison and within a reasonable time be capable of performing parental duties and providing permanency for his child?

Father's Brief at 7.

We review this appeal according to the following standard:

[A]ppellate courts must apply an abuse of discretion standard when considering a trial court's determination of a petition for termination of parental rights. As in dependency cases, our standard of review requires an appellate court to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. *In re: R.J.T.*, 608 Pa. 9, 9 A.3d 1179, 1190 (Pa. 2010). If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. *Id.*; *R.I.S.*, 36 A.3d [567,] 572 [(Pa. 2011) (plurality)]. As has been often stated, an abuse of discretion does not result merely because

- 4 -

the reviewing court might have reached a different conclusion. *Id*.; *see also Samuel Bassett v. Kia Motors America, Inc.*, 34 A.3d 1, 51 ([Pa.] 2011); *Christianson v. Ely*, 838 A.2d 630, 634 (Pa. 2003). Instead, a decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. *Id*.

As we discussed in *R.J.T.*, there are clear reasons for applying an abuse of discretion standard of review in these cases. We observed that, unlike trial courts, appellate courts are not equipped to make the fact-specific determinations on a cold record, where the trial judges are observing the parties during the relevant hearing and often presiding over numerous other hearings regarding the child and parents. *R.J.T.*, 9 A.3d at 1190. Therefore, even where the facts could support an opposite result, as is often the case in dependency and termination cases, an appellate court must resist the urge to second guess the trial court and impose its own credibility determinations and judgment; instead we must defer to the trial judges so long as the factual findings are supported by the record and the court's legal conclusions are not the result of an error of law or an abuse of discretion. *In re Adoption of Atencio*, 539 Pa. 161, 165, 650 A.2d 1064, 1066 (Pa. 1994).

*In re Adoption of S.P.*, 47 A.3d 817, 826–827 (Pa. 2012).

Termination of parental rights is governed by Section 2511 of the Adoption Act, which requires a bifurcated analysis:

Our case law has made clear that under Section 2511, the court must engage in a bifurcated process prior to terminating parental rights. Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child. One major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond between parent and child, with close attention

paid to the effect on the child of permanently severing any such bond.

*In re L.M.*, 923 A.2d 505, 511 (Pa. Super. 2007) (citing 23 Pa.C.S.A. § 2511). The burden is on the petitioner to prove by clear and convincing evidence that the asserted statutory grounds for seeking the termination of parental rights are valid. *In re R.N.J.*, 985 A.2d 273, 276 (Pa. Super. 2009).

Instantly, the orphans' court terminated Father's parental rights pursuant to the following provisions:

> **(a) General Rule.**—The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:
>
> * * *
>
> (1) The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.
>
> (2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.
>
> * * *
>
> (5) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency for a period of at least six months, the conditions which led to the removal or placement of the child continue to exist, the parent cannot or will not remedy those conditions within a reasonable period of time, the services or assistance reasonably available to the parent are not likely to remedy the conditions which led to the removal or placement of the child within a reasonable period

of time and termination of the parental rights would best serve the needs and welfare of the child.

* * *

(8) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency, 12 months or more have elapsed from the date of removal or placement, the conditions which led to the removal or placement of the child continue to exist and termination of parental rights would best serve the needs and welfare of the child.

* * *

**(b) Other considerations.—**The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent.  With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A. § 2511. "Parental rights may be involuntarily terminated where any one subsection of Section 2511(a) is satisfied, along with consideration of the subsection 2511(b) provisions." *In re Z.P.*, 994 A.2d 1108, 1117 (Pa. Super. 2010).

With respect to Section 2511(b), the requisite analysis is as follows:

Subsection 2511(b) focuses on whether termination of parental rights would best serve the developmental, physical, and emotional needs and welfare of the child.  In *In re C.M.S.*, 884 A.2d 1284, 1287 (Pa. Super. 2005), this Court stated, "Intangibles such as love, comfort, security, and stability are involved in the inquiry into the needs and welfare of the child." In addition, we instructed that the trial court must also discern the nature and status of the parent-child bond, with utmost

- 7 -

attention to the effect on the child of permanently severing that bond. *Id*. However, in cases where there is no evidence of a bond between a parent and child, it is reasonable to infer that no bond exists. *In re K.Z.S.*, 946 A.2d 753, 762-63 (Pa. Super. 2008). Accordingly, the extent of the bond-effect analysis necessarily depends on the circumstances of the particular case. *Id*. at 63.

*In re Adoption of J.M.*, 991 A.2d 321, 324 (Pa. Super. 2010).

"The statute permitting the termination of parental rights outlines certain irreducible minimum requirements of care that parents must provide for their children, and a parent who cannot or will not meet the requirements within a reasonable time following intervention by the state, may properly be considered unfit and may properly have … [his] rights terminated." *In re B.L.L.*, 787 A.2d 1007, 1013 (Pa. Super. 2001).

Parental duty requires that the parent act affirmatively with good faith interest and effort, and not yield to every problem, in order to maintain the parent-child relationship to the best of … [his] ability, even in difficult circumstances. A parent must utilize all available resources to preserve the parental relationship, and must exercise reasonable firmness in resisting obstacles placed in the path of maintaining the parent-child relationship. Parental rights are not preserved by waiting for a more suitable or convenient time to perform one's parental responsibilities while others provide the child with [the child's] physical and emotional needs. Where a parent is incarcerated, the fact of incarceration does not, in itself, provide grounds for the termination of parental rights. However, a parent's responsibilities are not tolled during incarceration. The focus is on whether the parent utilized resources available while in prison to maintain a relationship with…her child. An incarcerated parent is expected to utilize all available resources to foster a continuing close relationship with … [his] children.

*In re N.M.B.*, 856 A.2d 847, 855 (Pa. Super. 2004), *appeal denied*, 872 A.2d 1200 (Pa. 2005) (citations omitted).

- 8 -

After a thorough review of the record, the briefs of the parties, the applicable law, and the well-reasoned opinion of the Honorable Lesley Gorbey, we conclude Father's issues merit no relief. The orphans' court opinion comprehensively discusses and disposes of the questions presented. *See* Opinion Sur Appeal, 11/16/2014, at 6-9 (finding: (1) Father was in jail three times for approximately 17 months cumulatively during Child's 3-1/2 year life; (2) Father's efforts to remain connected with Child are lacking, in which he wrote to the caseworker a number of times to ask about Child but he did not communicate with Child by way of messages, cards, or gifts, and he "seems to be concerned about his relationship with the Agency rather than with [Child;]"[3] (3) Father made no effort to remind Child of his existence or maintain a psychological bond with Child; (4) Father has not finished his reunification plan and certain parts cannot be started until other sections are completed; (4) Father is a repeat criminal offender and once released from prison, Father has not demonstrated that he will not be in realistic position to care and provide stability for Child; and (5) termination of Father's parental rights is in Child's best interests because (a) Child barely knows Father, (b) Child knows his aunt and uncle very well since they have been providing for him during much of his short life, and (c) they provide a

_____

[3] Opinion Sur Appeal, 11/16/2014, at 6.

"loving and stable family"[4]). We agree with the court's rationale while emphasizing the court's concern that despite Father's numerous promises that he will put his life together once he is released from jail, "a child's life simply cannot be put on hold in the hope that [a parent] will summon the ability to handle the responsibilities of parenting." *In re Z.S.W.*, 946 A.2d 726, 732 (Pa. Super. 2008) (citation and quotation marks omitted).[5,6] Accordingly, we affirm on the basis of the orphans' court opinion.

Decree affirmed.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/17/2015

_____

[4] *Id.* at 9.

[5] It bears mentioning that while Father does not specifically attack any provision of Section 2511(a), the court's analysis satisfies Subsection 2511(a)(8).

[6] Furthermore, we note Child's Guardian *ad Litem* filed an appellate brief, joining in the appellee brief filed by CYS, requesting that this Court affirm the termination order on appeal.



IN THE COURT OF COMMON PLEAS OF LANCASTER COUNTY, PENNSYLVANIA
ORPHANS' COURT DIVISION

| | |
|---|---|
| IN THE INTEREST OF: | Docket No.: 1370 of 2014 |
| D███████ J████ C█████████, a minor | SUPER CT. NO.: 1794 MDA 2014 |

By: Leslie Gorbey, Judge

## OPINION SUR APPEAL

### Procedural History

A Petition to terminate the parental rights of C█████████ C█████████ (Father) to his son, D███████ J████ C█████████ (D██████) was filed on July 30, 2014, and a preliminary Decree was issued the same day scheduling a hearing for August 11, 2014. That hearing was continued and was held on September 29, 2014. A decree was issued the same day terminating Father's parental rights to D██████. Father filed an appeal to the Pennsylvania Superior Court on October 22, 2014, pursuant to which appeal this Opinion is being written.[1]

### Factual History

D██████ C█████████ was born on May █ 2011. (N.T. 4)[2] The history of his involvement with the Lancaster County Children and Youth Social Service Agency (Agency) goes back to 2012, after the Agency received a report concerning drug use by Father and D██████'s mother, A█████ W████ (Mother). Although the caseworker found Mother and Father to be drug free on a first visit, reports continued to be received

---

[1] The parental rights of D██████'s mother, A█████ W████ were also terminated in this action, not only to D██████ but to his half-sister, K████ W████ did not appeal.

[2] All citations to transcript pages in this opinion refer to the hearing of September 29, 2014 only.

by the Agency, and Mother refused to discuss these reports with the caseworker. (N.T. 11-12). On November 9, 2012, Father tested positive for opiates at a probation appointment. Mother, who had accompanied him, tested positive also and admitted to heroin use. The Agency put a safety plan in place. (N.T., 12-13) In February of 2013, Mother, who had not maintained consistent contact with the Agency, was in danger of eviction and had welfare fraud charges pending. She was not complying with the safety plan. Father, who had been imprisoned from November 9, 2012, to March 20, 2013, and from September 4, 2013 to October 9, 2013, was again in jail as of September 17, 2014 for two pending theft charges and a probation violation. He has a criminal history consisting of burglary, theft by unlawful taking and drug possession. There are outstanding warrants for his arrest in Tennessee and in Florida, where the county child services had taken his other two children, of whom he has never regained custody. He was indicated for physical abuse against his sister in 1998. (N.T. 14)

Since Mother was uncooperative with the Agency and Father was in prison at the beginning of 2013, the Agency decided to remove D█████ and his sibling K███ from their home. Physical custody of D██████ was taken on February 25, 2013; he was found to be dependent and legal custody was obtained on March 11, 2013 by court order. D██████, was placed with his paternal aunt and uncle, where he remains. K███ was placed with him (N.T. 15)

Both parents were given permanency plans with a goal of reunification, but neither completed his or her plan. (N.T. 14-15) Father never completed his mental health goal. He has not remained free from drugs and misuse of alcohol. His case with Family Alternatives was closed because he failed to make a required contact with the

2

23

organization. He has not remained crime free, has been in prison three separate times, and has had four probation violations. He will have two additional years of probation after he is released from his latest incarceration. He has not completed his goal of remaining free from domestic violence. He has not completed his goal of learning and using good parenting skills; he did not start the program prior to his incarceration and is not in a position to do so without a positive recommendation from both the mental health and the drug and alcohol treatment providers. His goal of being financially stable is incomplete because of his incarceration, and the outstanding warrants in Florida and Tennessee make him ineligible for work release. As for his goal of commitment to his child, while not in prison he attended five visits with D███████. The visits went well. While incarcerated, he wrote to the caseworker several times to inquire about the child's status. He never wrote directly to D███████ or sent him anything, and testified at hearing that no one ever told him he could do so and his mother thought that it would be better if he did not. (N.T. 32)[3]

Upon being released from prison, he will be working at a Halfway house for at least three months. He told the court that he believed he would then be able to provide appropriate care for the children, just like he did after his prior releases from prison. (N.T. 19-23, 33-35)

D██████ is doing very well with his aunt and uncle. His sister K████also lives in the household with him. He is attending Head Start and fits in well with the family, which is a permanent resource for him. (N.T. 23)

---

[3] In his 1925(b) statement, Father contended he sent correspondence to the caseworker asking about the child or intended for the child. The latter contention was directly contradicted by his testimony.

24

## Issue

Whether a parent's parental rights to his three year old son were appropriately terminated when Father was incarcerated for approximately seventeen months cumulatively during his son's life, maintained no direct connection with the child during his various incarcerations, had four probation violations during that time, was planning to be in a halfway house for some unspecific period after his release from prison, but had no specific job, money or settled plans to complete his reunification permanency plan after he left there.

## Analysis

Parental rights to D██████ C████████ were terminated pursuant to the Pennsylvania Adoption Statute. The pertinent statutory section, 23 Pa. C.S.A. §2511, provides as follows:

> (a) GENERAL RULE.–THE RIGHTS OF A PARENT IN REGARD TO A CHILD MAY BE TERMINATED AFTER A PETITION FILED ON ANY OF THE FOLLOWING GROUNDS:
>
> (1)    The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.
>
> (2)    The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.
>
> ...........
>
> (5)    The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency for a period of at least six months, the conditions which led to the removal or placement of the child continue to exist, the parent cannot or will not remedy those conditions within a reasonable period of time, the services or assistance reasonably

4

25

available to the parent are not likely to remedy the conditions which led to the removal or placement of the child within a reasonable period of time and termination of the parental rights would best serve the needs and welfare of the child.

. . . . . . . . . . . . .

(8)     The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency, 12 months or more have elapsed from the date of removal or placement, the conditions which led to the removal or placement of the child continue to exist and termination of parental rights wold best serve the needs and welfare of the child.

**(b) Other considerations.**– The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child.. . .

The party seeking the termination of parental rights bears the burden of establishing clear and convincing evidence to do so. *In Re C.M.S.*, 832 A.2d 457 (Pa. Super. 2003). Clear and convincing evidence is testimony that is so "clear, direct, weighty and convincing as to enable the trier of fact to come to a clear convictions, without hesitance, of the truth of the precise facts in issue." *In Re Adoption of J.M.M.*, 782 A.2d 1024, 1030 (Pa. Super. 2001), *citing In Re C.S.*, 761 A.2d 1197, 1201 (Pa. Super. 2000). In a termination proceeding, the focus is on the conduct of the parent and whether that conduct justifies a termination of parental rights. *In Re B.,N.M.*, 856 A.2d 847, 854-855 (Pa. Super. 2004). Grounds for termination can consist of lack of capacity and not just affirmative misconduct. A parent who is incapable of performing parental duties is just as parentally unfit as one who refuses to perform the duties. *In re Child M.*, 681 A.2d 793 (Pa. Super 1996)

Father contends in his 1925(b) statement that the Court erred in terminating his parental rights under these statutory sections. The Court does not agree.

5

26

D███████ was born on May █ 2011. Father was in jail three times for approximately seventeen months cumulatively during D███████'s 3-1/2 year life. During the year prior to the hearing, Father clearly had no easy avenue of contact with D███████ because of his incarceration. But the Pennsylvania Superior Court has said that "incarceration does not obviate a parent's duty to exercise reasonable firmness in maintaining a secure bond with a child. An incarcerated parent is expected to utilize whatever resources are available to him while in prison in order to foster a continuing close relationship with his children. In re V.E., 611 A.2d 1267 (Pa Super 1992)" An examination of Father's efforts to remain connected with D███████ shows a substantial lack of effort. He wrote to the caseworker a number of times to ask if D███████ was okay. He did not communicate with the child by way of messages or cards or gifts. He seems to have been concerned about his relationship with the Agency rather than with D███████ The Superior Court has been adamant that "to be legally significant, the [post-abandonment] contact must be steady and consistent over a period of time, contribute to the psychological health of the child, and must demonstrate a serious intent on the part of the parent to recultivate a parent child relationship and must also demonstrate a willingness and capacity to undertake the parental role. The parent wishing to reestablish his parental responsibilities bears the burden of proof on this question." In re Z.P., 994 A.2d 1108, 1119 (Pa. Super. 2010); In re A.D., 2014 PA Super 119, 93 A.3d 888 (Pa. Super. Ct. 2014) Father did not try very hard. Proving his interest to the caseworker was in no way the same as maintaining the bond with his child. D███████ was only two years old at the time of Father's last incarceration and had

6

27

no contact with him for a year. Father made no effort to remind the child of his existence or maintain a psychological bond with the child.

Father assured the Court that upon his release that after 90 days in a halfway house, he would be in a position to provide exemplary parenting for his son. There is no indication of that in the record. Father will be on probation for two years; he has violated prior probations four times, achieving returns to prison. He has not finished his reunification plan and certain parts cannot even be started until other sections are completed. Even if Father should be able to reach a position to have his child returned, that position will not come soon or easily. The Superior Court has said that a child's life "simply cannot be put on hold in the hope that [a parent] will summon the ability to handle the responsibilities of parenting." Id. at 1125. D██████ has already been in care for 18 months. Even where the parent makes earnest efforts, the "court cannot and will not subordinate indefinitely a child's need for permanence and stability to a parent's claims of progress and hope for the future. In re Adoption of R.J.S., 901 A.2d 502 (Pa Super 2006) Father has not for the past year showed the requisite indication that he was willing and/or able to act to the best of his ability as a parent, even given his incarceration. All he had to offer the court was rosy predictions and an unsupported belief that he could adequately care for his child in the future. The Court does not accept his unrealistic beliefs and finds that Father's parental rights fail the necessary standards for maintenance of his parental rights under the above-cited sections of the adoption statute.

7

Once the evidence establishes a failure to perform parental duties or a settled purpose of relinquishing parental rights, the court must engage in three lines of inquiry: (1) the parent's explanation for his or her conduct; (2) the post-abandonment contact between parent and child; and (3) consideration of the effect of termination of parental rights on the child pursuant to Section 2511(b). In re Z.S.W., 946 A.2d 726, 730 (Pa. Super. 2008) The answers to inquires (1) and (2) are obvious. Father was (1) in jail and (2) had no contact with D███████ As to the effect of a termination, the emotional needs and welfare of the child have been properly interpreted to include "[i]ntangibles such as love, comfort, security, and stability." In re K.M., 53 A.3d 781, 791 (Pa. Super. 2012). In *In re E.M.*, [620 A.2d 481, 485 (Pa. 1993)], the Superior Court held that the determination of the child's "needs and welfare" requires consideration of the emotional bonds between the parent and child. The "utmost attention" should be paid to discerning the effect on the child of permanently severing the parental bond. In re K.M., 53 A.3d at 791. In re: T.S.M., 71 A.3d 251, 267 (Pa. 2013). Father contends in his 1925(b) statement that termination of his parental rights is not in D███████'s best interest and will not promote the physical, mental or emotional well-being of the child. Father's assertion is inaccurate.

D███████ barely knows his Father. He knows his aunt and uncle well, because they have been his parents during much of his short life. It may be possible that Father could parent him adequately after some period of time, but there is a more realistic and serious risk of his repeating his history, violating his probation, and disappearing into prison – again. Except for Father's unsupported optimism at hearing, the Court has no evidence before it to indicate that Father is capable of controlling his actions so as to

8

29

avoid further criminal acts or probation violations or finish his plan. Therefore, the Court sees only benefit and no additional harm to the child in severing Father's parental relationship and leaving D███████ with people he considers to be his loving parents. The Court believes and holds that there is no negative effect on the child of permanently severing any remaining parental bond between D██████ and his father and that it is in D█████'s best interest to terminate Father's parental rights and allow D██████ to be part of a loving and stable family.

## Conclusion

For the reasons and law stated above, the Court finds that it appropriately terminated the parental rights of C████████ C████████ to his son D██████ J█████ C████████.

BY THE COURT:

*[signature]*

LESLIE GORBEY, JUDGE

DATED: November 6, 2014

Attest: *[signature]* Cindy L. Rowe
DEPUTY CLERK - OCD

Copies to:
Albert J. Meier, Esquire
David E. Alspach, Esquire
John P. Stengel, Esquire
A██████ W████, Mother

9

30