J-S77016-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: J.E.L.-B. & J.C.-B., MINORS | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| APPEAL OF: A.B., MOTHER | : | |
| | : | |
| | : | No. 813 MDA 2016 |

Appeal from the Decree Entered April 21, 2016
In the Court of Common Pleas of Lancaster County
Orphans' Court at No(s):  2706 of 2015, 2707 of 2015

BEFORE:  PANELLA, OLSON and PLATT*, JJ.

MEMORANDUM BY OLSON, J.:                    **FILED OCTOBER 12, 2016**

A.B. ("Mother") appeals from the decree dated and entered on April 21 2016, granting the petitions filed by the Lancaster County Children and Youth Social Services Agency ("CYS" or the "Agency"), and involuntarily terminating her parental rights to her male, minor children, J.C.-B., born in August of 2014, and J.E.L.-B., born in April of 2013, (individually, "Child," or collectively, the "Children"), pursuant to the Adoption Act, 23 Pa.C.S. § 2511(a)(1), (2), (5), and (b).[1]  Mother's counsel, Attorney Gina M. Carnes

---

* Retired Senior Judge assigned to the Superior Court.

[1] In separate decrees dated and entered on April 21, 2016, the trial court voluntarily terminated the parental rights of J.C.-B.'s father, C.A.M., Jr., and involuntarily terminated the parental rights of J.E.L.-B.'s father, P.S., under section 2511(a)(1), (2), and (b).   Neither father has appealed the
*(Footnote Continued Next Page)*

("Counsel"), filed a motion for leave to withdraw as counsel and a brief pursuant to **Anders v. California**, 386 U.S. 738, 744 (1967). We affirm, and grant the motion to withdraw filed by Mother's counsel.

In its opinion entered on June 17, 2016, the trial court aptly set forth the factual and procedural background of this appeal, which we adopt herein. In her timely appeal filed on May 19, 2016, Mother raises one issue challenging the sufficiency of the evidence to support the termination of her parental rights to the Children. **See Anders** Brief at 6.[2]

Pursuant to **Anders**, when counsel believes an appeal is frivolous and wishes to withdraw representation, he or she must do the following:

> (1) petition the court for leave to withdraw stating that after making a conscientious examination of the record . . ., counsel has determined the appeal would be frivolous;
>
> (2) file a brief referring to anything that might arguably support the appeal, but which does not resemble a "no-merit" letter or *amicus curiae* brief; and

_(Footnote Continued)_ ───────────────

termination of his parental rights, nor is either father a party to the instant appeal.

[2] In her concise statement that accompanied her notice of appeal, Mother stated her issue somewhat differently from her statement of questions involved portion of her brief, but neither document designated a particular subsection of section 2511 with regard to which the evidence was insufficient. We find that Mother adequately preserved her issue for our review. **Cf. Krebs v. United Refining Company of Pennsylvania**, 893 A.2d 776, 797 (Pa. Super. 2006) (holding that an appellant waives issues that are not raised in both the concise statement of errors complained of on appeal and the statement of questions involved section of the appellate brief).

> (3) furnish a copy of the brief to defendant and advise him of his right to retain new counsel, proceed *pro se,* or raise any additional points he deems worthy of the court's attention.

*In re S.M.B.*, 856 A.2d 1235, 1237 (Pa. Super. 2004) (citation omitted).

In *In re V.E.*, 611 A.2d 1267, 1274-75 (Pa. Super. 1992), this Court extended the *Anders* principles to appeals involving the termination of parental rights. "When considering an *Anders* brief, this Court may not review the merits of the underlying issues until we address counsel's request to withdraw." *In re S.M.B.*, 856 A.2d at 1237.

In *Commonwealth v. Santiago*, 978 A.2d 349 (Pa. 2009), our Supreme Court addressed the second requirement of *Anders*, *i.e.*, the contents of an *Anders* brief, and required that the brief:

> (1) provide a summary of the procedural history and facts, with citations to the record;
>
> (2) refer to anything in the record that counsel believes arguably supports the appeal;
>
> (3) set forth counsel's conclusion that the appeal is frivolous; and
>
> (4) state counsel's reasons for concluding that the appeal is frivolous. Counsel should articulate the relevant facts of record, controlling case law, and/or statutes on point that have led to the conclusion that the appeal is frivolous.

*Santiago*, 978 A.2d at 361. "After an appellate court receives an *Anders* brief and is satisfied that counsel has complied with the aforementioned requirements, the Court then must undertake an independent examination

- 3 -

of the record to determine whether the appeal is wholly frivolous." *In re S.M.B.*, 856 A.2d at 1237.

With respect to the third requirement of *Anders*, that counsel inform the defendant of his or her rights in light of counsel's withdrawal, this Court has held that counsel must "attach to [a] petition to withdraw a copy of the letter sent to the[] client advising him or her of their rights." *Commonwealth v. Millisock*, 873 A.2d 748, 752 (Pa. Super. 2005).[3]

Here, counsel complied with each of the requirements of *Anders*. Counsel states that she conscientiously examined the record and determined that an appeal would be frivolous. Further, counsel's *Anders* brief comports with the requirements set forth by the Supreme Court of Pennsylvania in *Santiago*. Finally, counsel filed, with her motion to withdraw, a copy of the letter that counsel sent to Mother, advising her of her right to proceed *pro se* or retain alternate counsel and file additional claims, and stating counsel's intention to seek permission to withdraw. Accordingly, counsel complied with the procedural requirements for withdrawing from representation, and we will proceed with our independent review.

In reviewing an appeal from an order terminating parental rights, we adhere to the following standard:

---

[3] Counsel attached to her motion to withdraw and *Anders* brief a copy of her letter to Mother, dated July 20, 2016, in compliance with *Millisock*.

[A]ppellate courts must apply an abuse of discretion standard when considering a trial court's determination of a petition for termination of parental rights. As in dependency cases, our standard of review requires an appellate court to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. *In re: R.J.T.*, 608 Pa. 9, 9 A.3d 1179, 1190 (Pa. 2010). If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. *Id.*; *R.I.S.*, 36 A.3d 567, 572 (Pa. 2011) (plurality opinion). As has been often stated, an abuse of discretion does not result merely because the reviewing court might have reached a different conclusion. *Id.*; *see also Samuel Bassett v. Kia Motors America, Inc.*, 34 A.3d 1, 51 (Pa. 2011); *Christianson v. Ely*, 838 A.2d 630, 634 (Pa. 2003). Instead, a decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. *Id.*

As we discussed in *R.J.T.*, there are clear reasons for applying an abuse of discretion standard of review in these cases. We observed that, unlike trial courts, appellate courts are not equipped to make the fact-specific determinations on a cold record, where the trial judges are observing the parties during the relevant hearing and often presiding over numerous other hearings regarding the child and parents. *R.J.T.*, 9 A.3d at 1190. Therefore, even where the facts could support an opposite result, as is often the case in dependency and termination cases, an appellate court must resist the urge to second guess the trial court and impose its own credibility determinations and judgment; instead we must defer to the trial judges so long as the factual findings are supported by the record and the court's legal conclusions are not the result of an error of law or an abuse of discretion. *In re Adoption of Atencio*, 650 A.2d 1064, 1066 (Pa. 1994).

*In re Adoption of S.P.*, 47 A.3d 817, 826-27 (Pa. 2012).

The burden is upon the petitioner to prove by clear and convincing evidence that the asserted grounds for seeking the termination of parental rights are valid. *In re R.N.J.*, 985 A.2d 273, 276 (Pa. Super. 2009).

Moreover, we explained:

[t]he standard of clear and convincing evidence is defined as testimony that is so "clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue."

*Id.* quoting ***In re J.L.C.***, 837 A.2d 1247, 1251 (Pa. Super. 2003).

This Court may affirm the trial court's decision regarding the termination of parental rights with regard to any one subsection of section 2511(a). ***See In re B.L.W.***, 843 A.2d 380, 384 (Pa. Super. 2004) (*en banc*). The trial court terminated Mother's parental rights under section 2511(a)(1), (2), (5) and (b). We will focus on section 2511(a)(2) and (b), which provides as follows:

### § 2511. Grounds for involuntary termination

(a) General rule.--The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

\* \* \*

(2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

\* \* \*

(b) Other considerations.--The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein

which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A. § 2511.

In the **Anders** brief, Mother contends that the trial court failed to give her credit for the items that she completed, or partially completed, on her reunification plan for Child. **Anders** Brief, at 11. In particular, Mother asserts that she undertook efforts to complete the plan, particularly with regard to goals relating to her work history, commitment to the Children, and mental health counseling. Mother complains that Agency caseworkers did not do enough to assist her in cutting through some of the "red tape" involved in the mental health care system. Mother alleges that she experienced a delay in meeting the requirement, imposed by the Agency's provider, of having a family member complete a family history form. Mother asserts that, by imposing this requirement, the Agency placed an obstacle in her path. Mother argues that the Agency knew she had cognitive issues and nevertheless did nothing to assist her in timely completing her mental health goal objective. Accordingly, Mother argues that the Agency effectively abandoned its duty to work with her toward the completion of her plan. **Id.** Mother also complains that the Agency failed to produce the expert who conducted her mental health and intelligence quotient testing, which was the basis for the Agency's request that Mother have an adaptive functioning assessment. **Id.** at 12. Mother asserts that the Children were in a pre-adoptive home at the time of the termination hearing, and that allowing

Mother additional time to satisfy the plan for reunification would not have caused a disturbance in their daily lives. *Id.*

To satisfy the requirements of section 2511(a)(2), the moving party must produce clear and convincing evidence regarding the following elements: (1) repeated and continued incapacity, abuse, neglect or refusal; (2) such incapacity, abuse, neglect or refusal that caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being; and (3) the causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied. *See In re Adoption of M.E.P.*, 825 A.2d 1266, 1272 (Pa. Super. 2003). The grounds for termination of parental rights under section 2511(a)(2), due to parental incapacity that cannot be remedied, are not limited to affirmative misconduct; to the contrary, those grounds may include acts of refusal as well as incapacity to perform parental duties. *In re A.L.D.* 797 A.2d 326, 337 (Pa. Super. 2002).

While Mother contends that the trial court abused its discretion and erred as a matter of law in terminating her parental rights when CYS failed to provide reasonable efforts to promote reunification between her and the Children prior to filing the termination petitions, our Supreme Court has held that the trial court is not required to consider reasonable efforts in relation to a decision to terminate parental rights under section 2511(a)(2). *In the*

*Interest of: D.C.D.*, 105 A.3d 662, 675 (Pa. 2014). Thus, we find her argument lacks merit.

Nevertheless, the facts, as found by the trial court, support the conclusion that CYS made reasonable efforts to reunify the Children with Mother. After a careful review of the record in this matter, we find that the record supports the trial court's factual findings. We also conclude that the trial court's legal determinations are not the result of an error of law. *In re Adoption of S.P.*, 47 A.3d at 826-27. We, therefore, affirm the termination of Mother's parental rights with regard to the Children under section 2511(a)(2) on the basis of the trial court opinion entered on June 17, 2016. *See* Trial Court Opinion, 6/17/16, at 3-5.

Next, we review the termination of the parental rights of Mother under section 2511(b). This Court has stated that the focus in terminating parental rights under section 2511(a) is on the parent, but it is on the child pursuant to section 2511(b). *See In re Adoption of C.L.G.*, 956 A.2d 999, 1008 (Pa. Super. 2008) (*en banc*).

Mother claims that it was in the Children's best interest to have a chance for reunification with her. Mother asserts that it is unjust for the trial court to terminate her parental rights because the Children have bonded with her, and she does not wish for them to experience a feeling of loss. *Anders* Brief, at 12.

In reviewing the evidence in support of termination under section 2511(b), our Supreme Court recently stated as follows.

[I]f the grounds for termination under subsection (a) are met, a court "shall give primary consideration to the developmental, physical and emotional needs and welfare of the child." 23 Pa.C.S. § 2511(b). The emotional needs and welfare of the child have been properly interpreted to include "[i]ntangibles such as love, comfort, security, and stability." *In re K.M.*, 53 A.3d 781, 791 (Pa. Super. 2012). In *In re E.M.*, [620 A.2d 481, 485 (Pa. 1993), Our Supreme] Court held that the determination of the child's "needs and welfare" requires consideration of the emotional bonds between the parent and child. The "utmost attention" should be paid to discerning the effect on the child of permanently severing the parental bond. *In re K.M.*, 53 A.3d at 791.

*In re: T.S.M.*, 71 A.3d 251, 267 (Pa. 2013).

In its opinion, the trial court found that the Children have been in placement in the same foster home for nineteen months, that they do not actively remember a time when they were living with Mother, and that any bond with her was limited, at best. *See* Trial Court Opinion, 6/17/16, at 7. Moreover, the trial court found that the Children are thriving in a loving home with their foster parents and are clearly bonded with the other children in the home who have been adopted by the resource family. *Id.* Additionally, the trial court found from the testimonial evidence that Mother's visits would cause J.C.-B. distress. *Id.* The trial court stated:

[J.E.L.-B. and J.C.-B.] cannot wait for an indefinite period of time for the stability and care of a permanent family in the hope that their biological [m]other will drastically change her behavior and accomplish her goals. The [C]hildren are all doing well, and have spent more time with their current family than with anyone else. After nineteen months, [J.E.L.-B. and J.C.-B.] have a much

closer bond with their foster parents than the minimal connection they have with their [m]other. It is clear to this [c]ourt that the best interest of these children is served by Mother's rights being terminated and the [C]hildren [being] adopted.

Trial Court Opinion, 6/17/16, at 7.

After a careful review of the record in this matter, we find that the record supports the trial court's factual findings and that the court's legal conclusions are not in error. **In re Adoption of S.P.**, 47 A.3d at 826-27. Accordingly, it was proper for the trial court to find no bond exists such that the Children would suffer permanent emotional harm if Mother's parental rights were terminated. **In re K.Z.S.**, 946 A.2d 753, 764 (Pa. Super. 2008). It is well-settled that "we will not toll the well-being and permanency of [a child] indefinitely." **In re Adoption of C.L.G.**, 956 A.2d at 1007, *citing* **In re Z.S.W.**, 946 A.2d 726, 732 (Pa. Super. 2008) (noting that a child's life "simply cannot be put on hold in the hope that [a parent] will summon the ability to handle the responsibilities of parenting."). We, therefore, affirm the termination of Mother's parental rights with regard to the Children under section 2511(b), on the basis of the trial court opinion. **See** Trial Court Opinion, 6/17/16, at 6-7.[4] We also grant Counsel's motion to withdraw. As

---

[4] "Once counsel has satisfied the [requirements for withdrawal from representation], it is then this Court's duty to conduct its own review of the trial court's proceedings and render an independent judgment as to whether the appeal is, in fact, wholly frivolous." **Commonwealth v. Goodwin**, 928 A.2d 287, 291 (Pa. Super. 2007) (*en banc*), *quoting* **Commonwealth v.**
*(Footnote Continued Next Page)*

we are affirming based on the trial court opinion, the parties are directed to attach a copy of said opinion (with the names and all identifying information regarding the parties and the Children redacted) to any future filings in this Court.

Decree affirmed. Counsel's motion to withdraw granted.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary


Date: 10/12/2016


_(Footnote Continued)_ ─────────────

***Wright***, 846 A.2d 730, 736 (Pa. Super. 2004). ***See Commonwealth v. Flowers***, 113 A.3d 1246, 1250 (Pa. Super. 2015) (following ***Goodwin***). After conducting an independent review, we find that this appeal is wholly frivolous.

IN THE COURT OF COMMON PLEAS OF LANCASTER COUNTY, PENNSYLVANIA
ORPHANS' COURT DIVISION

In re:

J. E. L. -B, and
J. C. - B.

By: Thomas B. Sponaugle, Judge

: SUPERIOR COURT NO.: 813 MDA 2016
:
: No. 2706-2015
: No. 2707-2015

## OPINION SUR APPEAL

### Procedural History

On September 3, 2014, the Lancaster County Children and Youth Social Services Agency (Agency) filed petitions for temporary custody against A. B. (Mother) and P. S. for their son, J. E. L-B. and against Mother and C. M. for their son, J. C. - B. , resulting in the children being placed in shelter care the same day. On September 5, 2014, the Court accepted a master's recommendation that both children continue to reside in foster care. After an Adjudication and Disposition Hearing on October 31, 2014, J.E.L-B. + J. C-B. were found dependent, continuing in foster care.

On December 30, 2015, the Agency filed a petition with the Lancaster County Orphan's Court to involuntarily terminate Mother's, P. S.'s and C. M.'s parental rights. On January 28, 2016, the hearing on the Petition to Terminate Parental Rights of Parents was continued to March 10, 2016, at which time, the Court heard testimony from an Agency caseworker and P. S. , but continued the remainder of the testimony to April 21, 2016, when Mother arrived over two hours late to contest the termination. (N.T. 69-74, 3/10/2016). On April 21, 2016, the Court issued a decree that involuntarily terminated Mother's rights to

1

J. E. L.-B. & J.C.-B. involuntarily terminated P.S.'s rights to J.E.L-B. and voluntarily terminated C.M.'s rights to J.C-B.

On May 19, 2016, Mother filed a Notice of Appeal to the Superior Court of Pennsylvania of the April 21, 2016, Orphans Court Order terminating her parental rights. This opinion is filed pursuant to her appeal.

### Factual History

The Agency received multiple referrals regarding the B. family from June 2013 to May 2014. The reported concerns were unstable housing, Mother's questionable ability to meet J.E.L.B.'s needs, and Mother's drug use. The reports were investigated but closed because Mother was not residing in Lancaster County.

On May 6, 2014, the Agency received another referral for A. B. and J.E.L-B., as they had moved back to Lancaster County. The concerns were for unstable housing and Mother's mental health issues. The Agency developed a Family Service Plan (FSP) to address those issues, which Mother signed on July 9, 2016.

While pregnant with J.E.L-B. Mother was admitted and then discharged from multiple housing assistance programs due to her non-compliance with rules. (N.T. 33-34, 53, 4/21/2016). At the time of J.E.L-B.'s birth on August 30, 2014, Mother did not have the supplies necessary to care for an infant. An unannounced home visit on September 2, 2014, revealed that Mother did not have adequate formula to feed the child.

The Agency filed a Petition for Temporary Custody on September 3, 2014, and two days later Mother waived the Shelter Care Hearing without admitting any of the allegations in the Petition. At an October 31, 2014, Adjudication and Disposition Hearing, Mother agreed with

2

the Child Permanency Plan (CPP) and the finding of dependency. Mother continued to struggle

with the issues identified in the CPP, and at the time of the Petition for Termination of Parental

Rights Hearing on April 21, 2016, she had failed to complete any of the goals in her plan.

## Issue

Whether the court appropriately terminated Mother's rights to J.E.L.-B, +J.O.-B when

Mother has made no progress on the goals set for her in the nineteen months since the

children's placement, continues to have issues with housing, mental health, and income, and

the children have bonded very well with a potentially adoptive family?

## Analysis

The termination of parental rights is governed by 23 Pa. C. S. §2511. The relevant

sections of that statute provide as follows:

23 Pa. C.S. §2511
  (a) General rule.--The rights of a parent in regard to a child may be terminated after a
    petition filed on any of the following grounds:
      (1) The parent by conduct continuing for a period of at least six months
      immediately preceding the filing of the petition either has evidenced a settled
      purpose of relinquishing parental claim to a child or has refused or failed to
      perform parental duties.
      (2) The repeated and continued incapacity, abuse, neglect or refusal of the
      parent has caused the child to be without essential parental care, control or
      subsistence necessary for his physical or mental well-being and the conditions
      and causes of the incapacity, abuse, neglect or refusal cannot or will not be
      remedied by the parent.
      ..........
      (5) The child has been removed from the care of the parent by the court or
      under a voluntary agreement with an agency for a period of at least six months,
      the conditions which led to the removal or placement of the child continue to
      exist, the parent cannot or will not remedy those conditions within a reasonable
      period of time, the services or assistance reasonably available to the parent are
      not likely to remedy the conditions which led to the removal or placement of the

3

child within a reasonable period of time and termination of the parental rights would best serve the needs and welfare of the child.

The party seeking the termination of parental rights bears the burden of establishing clear and convincing evidence to support the petition. *In Re C.M.S.*, 832 A.2d 457 (Pa. Super. 2003). Clear and convincing evidence is testimony that is so "clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue." *In Re Adoption of J.M.M.*, 782 A.2d 1024, 1030 (Pa. Super. 2001), *citing In Re C.S.*, 761 A.2d 847, 854-855 (Pa. Super. 2004). In a termination proceeding the focus is on the conduct of the parent, and whether that conduct justifies a termination of parental rights. *In Re B.,N.M.*, 856 A.2d 847, 854-855 (Pa. Super. 2004). This Court is satisfied that the Agency has proven its termination case by clear and convincing evidence. Though the Agency's petition asked for termination under Sections 2511(a)(1), (2), and (5), only one of the sections is necessary for termination. *In re P.Z.*, 113 A.3d 840, 851 (Pa. Super. 2015), *citing In re B.L.W.*, 843 A.2d 380, 384 (Pa. Super. 2004) (en banc).

Mother's parental obligation to her children is a "positive duty that requires active performance." *In re Z.P.*, 994 A.2d 1108, 1119 (Pa. Super. 2010) (quoting *In re B., N.M.*, 856 A.2d 847 (Pa. Super. 2004) *(citation omitted)*. A merely passive interest in the development of the child is not sufficient. *(Id.)*. Though Mother admitted to the finding of dependency, she has not completed nor made substantial progress on any of her plan's goals. Specifically, she failed to address the concerns about her mental health, parenting skills, financial stability, and stable housing despite the Agency's best efforts to help her during the last nineteen months prior to termination.

4

Mother did not successfully complete her mental health goal. She was evaluated on December 19, 2014, by Dr. Jonathan Gransee and Associates after missing her first appointment. (N.T. 15, 4/21/2016). The evaluation identified Mother's IQ as 63, which is in the mild mental retardation range. (N.T. 17, 4/21/2016). The evaluator recommended that Mother have a minimum of twenty-six weekly sessions with a counselor skilled in addressing depression, anger, and behavioral issues with cognitively delayed individuals, and she was referred for an Adaptive Functioning Assessment on June 30, 2015. (N.T. 15-16, 17-18, 4/21/2016). Despite substantial effort by the Agency[1] to help Mother finish the parenting capacity assessment, her lack of follow through prevented it from being completed. (N.T. 23-24, 46, 4/21/2016).

Mother failed to complete mental health treatment. On January 30, 2015, Mother was referred to Philhaven, a behavioral healthcare provider, for ongoing mental health care. (N.T. 19, 4/21/2016). On April 28, 2015, when the Agency asked her about her mental health treatment status, Mother stated that she had healthcare but had still not contacted Philhaven. (N.T. 19, 4/21/2016). Mother was verbally reminded at that time, and again by letter on May 21, 2015, that she needed to contact Philhaven as soon as possible. (N.T. 19, 4/21/2016). Though Mother eventually indicated that she had received some treatment for depression at T.W. Ponessa Counseling Services, she did not follow through with Philhaven until August 13, 2015. (N.T. 21, 23, 4/21/2016) and voluntarily ended treatment four months later without successfully completing it. (N.T. 20-21, 23, 4/21/2016).

---

[1] In addition to following up with Mother and her healthcare providers, the Agency Caseworkers created "to-do" lists for her that spelled out everything that Mother needed to do. (N.T. 47, 4/21/2016). The caseworker also met with Mother multiple times to ensure that she understood her responsibilities and available resources. (N.T. 47, 4/21/2016).

The Agency has met its burden to terminate Mother's parental rights under 23 Pa.C.S. §2511(a) (1), (2), and (5). The children were removed from Mother's custody because of her failure to provide the necessary care and support. There is no evidence that Mother has made any significant progress toward solving her issues. Mother cannot remedy those behaviors which caused the initial placement of the children.

J.E.L.-B's + J.C.-B.'s best interest is served by their remaining in foster care and being adopted. The children have been in care for more than nineteen months. Given Mother's history, the Court is convinced that she will not resolve her significant issues in a reasonable time. The children are thriving in a loving and healthy home which is a potentially permanent resource. (N.T. 38-39, 69, 4/21/2016). The two boys are clearly bonded with the resource parents, and with the other children in the home who have been adopted by the resource family. (N.T. 69, 4/21/2016). The children do not actively remember a time when they were living with the Mother. Any bond with her at this time is very limited at best. Mother's visits would cause J.C.B. significant distress. (N.T. 48, 4/21/2016).

J.E.L.-B. + J.C.-B. cannot wait for an indefinite period of time for the stability and care of a permanent family in the hope that their biological Mother will drastically change her behavior and accomplish her goals. The children are all doing well, and have spent more time with their current family than with anyone else. After nineteen months, J.E.L.-B +J.C.-B. have a much closer bond with their foster parents than the minimal connection they have with their Mother. It is clear to this Court that the best interest of these children is served by Mother's rights being terminated and the children to be adopted.

## Conclusion

Based on the above, the Court finds that the Agency has sustained its burden under 23

Pa.C.S.A. §2511(a) (1), (2), and (5). The Court's Order of April 21, 2016, properly terminated

Mother's parental rights to  J. E. L. -B.  +  J. C. -B.

BY THE COURT:

DATED:  6|17|16

THOMAS B. SPONAUGLE, JUDGE

Attest: _[signature]_
DEPUTY CLERK - OOD

Copies to:
Gina Carnes, Esquire
David Natan, Esquire
JoAnne Murphy, Esquire [GAL]
LCC&YSSA

8

## Conclusion

Based on the above, the Court finds that the Agency has sustained its burden under 23 Pa.C.S.A. §2511(a) (1), (2), and (5). The Court's Order of April 21, 2016, properly terminated Mother's parental rights to

BY THE COURT:

DATED: 6\17\16

THOMAS B. SPONAUGLE, JUDGE

Attest:

DEPUTY CLERK - COD

Copies to:
Gina Carnes, Esquire
David Natan, Esquire
JoAnne Murphy, Esquire [GAL]
LCC&YSSA

8