J-S20041-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN RE: D.S.H. AND B.R.H., MINORS | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| APPEAL OF: J.N.H., MOTHER | : | No. 1847 MDA 2017 |

Appeal from the Decrees November 2, 2017
In the Court of Common Pleas of Lancaster County
Orphans' Court at No(s): 2017-01751

BEFORE: GANTMAN, P.J., OTT, J., and KUNSELMAN, J.

MEMORANDUM BY GANTMAN, P.J.: **FILED MAY 03, 2018**

Appellant, J.N.H. ("Mother"), appeals from the decrees entered in the Court of Common Pleas of Lancaster County Orphans' Court Division, which granted the petition of the Lancaster County Children and Youth Social Services Agency ("Agency") for involuntary termination of her parental rights to her minor children, D.S.H. and B.R.H., ("Children"). We affirm.

In its opinion, the Orphans' Court fully and correctly set forth the relevant facts and procedural history of the case.[1] Therefore, we have no reason to restate them.

Mother raises the following issues for our review:

> WHETHER THE COURT ERRED IN TERMINATING FATHER'S
> AND MOTHER'S PARENTAL RIGHTS?

---

[1] This appeal is related to the appeal listed at No. 1795 MDA 2017 (J-S20040-18).

WHETHER THE COURT ERRED IN CONCLUDING THAT THE EVIDENCE CLEARLY AND CONVINCINGLY ESTABLISHED THAT FATHER AND MOTHER HAD, BY CONDUCT CONTINUING FOR MORE THAN SIX MONTHS, EVIDENCED A SETTLED PURPOSE OF RELINQUISHING PARENTAL CLAIM TO CHILDREN AND HAD REFUSED [OR] FAILED TO PERFORM PARENTAL DUTIES?

WHETHER THE COURT ERRED IN CONCLUDING THAT THE EVIDENCE CLEARLY AND CONVINCINGLY ESTABLISHED THAT THE REPEATED AND CONTINUED INCAPCITY, NEGLECT OR REFUSAL OF FATHER AND MOTHER HAD CAUSED CHILDREN TO BE WITHOUT ESSENTIAL PARENTAL CARE, CONTROL AND SUBSISTENCE NECESSARY FOR THEIR PHYSICAL AND MENTAL WELL-BEING AND THAT THE CONDITIONS AND CAUSES OF THE INCAPACITY, NEGLECT OR REFUSAL CANNOT OR WILL NOT BE REMEDIED BY THE PARENTS?

WHETHER THE COURT ERRED IN CONCLUDING THAT THE LANCASTER COUNTY CHILDREN AND YOUTH AGENCY HAD MET ITS BURDEN IN PROVING THAT FATHER'S AND MOTHER'S PARENTAL RIGHTS SHOULD BE TERMINATED WHEN THERE WAS EVIDENCE THAT MOTHER HAD BEEN ACTIVELY WORKING ON AND COMPLETING THE GOALS OF HER CHILD PERMANENCY PLAN?

WHETHER THE COURT ERRED IN FINDING THAT TERMINATING FATHER'S AND MOTHER'S PARENTAL RIGHTS WOULD BEST SERVE THE NEEDS AND WELFARE OF CHILDREN?

(Mother's Brief at 4).[2]

_____

[2] Pennsylvania law on common law standing provides that a person can invoke the jurisdiction of a court to enforce private rights or maintain an action for the enforcement of such rights, only if that person has in an individual or representative capacity some real interest in the legal right that is the subject matter of the controversy. **In Interest of G.C.**, 673 A.2d 932, 935 (Pa.Super. 1996). **See generally In re T.J.**, 559 Pa. 118, 124, 739 A.2d 478, 481 (1999) (stating: "In determining whether a party has standing, a court is

Appellate review of termination of parental rights cases implicates the following principles:

> In cases involving termination of parental rights: "our standard of review is limited to determining whether the order of the trial court is supported by competent evidence, and whether the trial court gave adequate consideration to the effect of such a decree on the welfare of the child."

*In re Z.P.*, 994 A.2d 1108, 1115 (Pa.Super. 2010) (quoting *In re I.J.*, 972 A.2d 5, 8 (Pa.Super. 2009)).

> > Absent an abuse of discretion, an error of law, or insufficient evidentiary support for the trial court's decision, the decree must stand. … We must employ a broad, comprehensive review of the record in order to determine whether the trial court's decision is supported by competent evidence.
> >
> > *In re B.L.W.*, 843 A.2d 380, 383 (Pa.Super. 2004) (*en banc*), *appeal denied*, 581 Pa. 668, 863 A.2d 1141 (2004) (internal citations omitted).
> >
> > Furthermore, we note that the trial court, as the finder of fact, is the sole determiner of the credibility of witnesses and all conflicts in testimony are to be resolved by the finder of fact. The burden of proof is

_____

concerned only with the question of who is entitled to make a legal challenge and not the merits of that challenge"; "the purpose of the 'standing' requirement is to insure that a legal challenge is by a proper party"). Here, Mother filed a notice of appeal from the November 2, 2017 decrees terminating her parental rights. Father also filed a notice of appeal from the November 2, 2017 decrees terminating his parental rights. Mother and Father each improperly filed only a single notice of appeal from those decisions. The subject decrees reflected the separate docket numbers and separate decisions as to each child. The decrees were entered on each docket. Mother should have filed separate notices of appeal from each of the November 2, 2017 decrees entered on separate dockets. In any event, Mother has no standing to raise issues related to Father or on Father's behalf.

on the party seeking termination to establish by clear and convincing evidence the existence of grounds for doing so.

*In re Adoption of A.C.H.*, 803 A.2d 224, 228 (Pa.Super. 2002) (internal citations and quotation marks omitted). The standard of clear and convincing evidence means testimony that is so clear, direct, weighty, and convincing as to enable the trier of fact to come to a clear conviction, without hesitation, of the truth of the precise facts in issue. *In re J.D.W.M.*, 810 A.2d 688, 690 (Pa.Super. 2002). We may uphold a termination decision if any proper basis exists for the result reached. *In re C.S.*, 761 A.2d 1197, 1201 (Pa.Super. 2000) (*en banc*). If the court's findings are supported by competent evidence, we must affirm the court's decision, even if the record could support an opposite result. *In re R.L.T.M.*, 860 A.2d 190, 191-92 (Pa.Super. 2004).

*In re Z.P., supra* at 1115-16 (quoting *In re Adoption of K.J.*, 936 A.2d 1128, 1131-32 (Pa.Super. 2007), *appeal denied*, 597 Pa. 718, 951 A.2d 1165 (2008)).

Agency filed a petition for the involuntary termination of Mother's parental rights to Children on the following grounds:

**§ 2511. Grounds for involuntary termination**

**(a) General Rule.**—The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

(1) The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.

(2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or

subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

\* \* \*

(5) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency for a period of at least six months, the conditions which led to the removal or placement of the child continue to exist, the parent cannot or will not remedy those conditions within a reasonable period of time, the services or assistance reasonably available to the parent are not likely to remedy the conditions which led to the removal or placement of the child within a reasonable period of time and termination of the parental rights would best serve the needs and welfare of the child.

\* \* \*

(8) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency, 12 months or more have elapsed from the date of removal or placement, the conditions which led to the removal or placement of the child continue to exist and termination of parental rights would best serve the needs and welfare of the child.

\* \* \*

**(b) Other considerations.**—The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A. § 2511(a)(1), (a)(2), (a)(5), (a)(8), and (b). "Parental rights may be involuntarily terminated where any one subsection of Section 2511(a) is satisfied, along with consideration of the subsection 2511(b) provisions."

*In re Z.P., supra* at 1117.

> Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only if the court determines that the parent's conduct warrants termination of…her parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child.

*In re L.M.*, 923 A.2d 505, 511 (Pa.Super. 2007) (internal citations omitted).

Termination under Section 2511(a)(1) involves the following:

> To satisfy the requirements of [S]ection 2511(a)(1), the moving party must produce clear and convincing evidence of conduct, sustained for at least the six months prior to the filing of the termination petition, which reveals a settled intent to relinquish parental claim to a child or a refusal or failure to perform parental duties. In addition,
>
> > Section 2511 does not require that the parent demonstrate both a settled purpose of relinquishing parental claim to a child and refusal or failure to perform parental duties. Accordingly, parental rights may be terminated pursuant to Section 2511(a)(1) if the parent either demonstrates a settled purpose of relinquishing parental claim to a child or fails to perform parental duties.
>
> Once the evidence establishes a failure to perform parental duties or a settled purpose of relinquishing parental rights, the court must engage in three lines of inquiry: (1) the parent's explanation for…her conduct; (2) the post-abandonment contact between parent and child; and (3)

consideration of the effect of termination of parental rights on the child pursuant to Section 2511(b).

*In re Z.S.W.*, 946 A.2d 726, 730 (Pa.Super. 2008) (internal citations omitted). Regarding the six-month period prior to filing the termination petition:

> [T]he trial court must consider the whole history of a given case and not mechanically apply the six-month statutory provision. The court must examine the individual circumstances of each case and consider all explanations offered by the parent facing termination of…her parental rights, to determine if the evidence, in light of the totality of the circumstances, clearly warrants the involuntary termination.

*In re B.,N.M.*, 856 A.2d 847, 855 (Pa.Super. 2004), *appeal denied*, 582 Pa. 718, 872 A.2d 1200 (2005) (internal citations omitted).

The grounds for termination of parental rights under Section 2511(a)(2), due to parental incapacity that cannot be remedied, are not limited to affirmative misconduct; to the contrary those grounds may include acts of refusal as well as incapacity to perform parental duties. *In re A.L.D.*, 797 A.2d. 326, 337 (Pa.Super. 2002). "Parents are required to make diligent efforts towards the reasonably prompt assumption of full parental responsibilities." *Id.* at 340. The fundamental test in termination of parental rights under Section 2511(a)(2) was long ago stated in the case of *In re Geiger*, 459 Pa. 636, 331 A.2d 172 (1975), where the Pennsylvania Supreme Court announced that under what is now Section 2511(a)(2), "the petitioner for involuntary termination must prove (1) repeated and continued incapacity,

- 7 -

abuse, neglect or refusal; (2) that such incapacity, abuse, neglect or refusal caused the child to be without essential parental care, control or subsistence; and (3) that the causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied." ***In Interest of Lilley***, 719 A.2d 327, 330 (Pa.Super. 1998).

"Termination of parental rights under Section 2511(a)(5) requires that: (1) the child has been removed from parental care for at least six months; (2) the conditions which led to removal and placement of the child continue to exist; and (3) termination of parental rights would best serve the needs and welfare of the child." ***In re Z.P., supra*** at 1118.

"[T]o terminate parental rights under Section 2511(a)(8), the following factors must be demonstrated: (1) [t]he child has been removed from parental care for 12 months or more from the date of removal; (2) the conditions which led to the removal or placement of the child continue to exist; and (3) termination of parental rights would best serve the needs and welfare of the child." ***In re Adoption of M.E.P.***, 825 A.2d 1266, 1275-76 (Pa.Super. 2003). "Section 2511(a)(8) sets a 12–month time frame for a parent to remedy the conditions that led to the children's removal by the court." ***In re A.R.***, 837 A.2d 560, 564 (Pa.Super. 2003). Once the 12–month period has been established, the court must next determine whether the conditions that led to the child's removal continue to exist, despite the reasonable good faith efforts of the Agency supplied over a realistic time. ***Id.*** Termination under

Section 2511(a)(8) does not require the court to evaluate a parent's current willingness or ability to remedy the conditions which initially caused placement or the availability or efficacy of Agency services. *In re Adoption of T.B.B.*, 835 A.2d 387, 396 (Pa.Super. 2003); *In re Adoption of M.E.P., supra*.

Under Section 2511(b), the court must consider whether termination will meet the child's needs and welfare. *In re C.P.*, 901 A.2d 516, 520 (Pa.Super. 2006). "Intangibles such as love, comfort, security, and stability are involved when inquiring about the needs and welfare of the child. The court must also discern the nature and status of the parent-child bond, paying close attention to the effect on the child of permanently severing the bond." *Id.* Significantly:

> In this context, the court must take into account whether a bond exists between child and parent, and whether termination would destroy an existing, necessary and beneficial relationship.
>
> When conducting a bonding analysis, the court is not required to use expert testimony. Social workers and caseworkers can offer evaluations as well. Additionally, Section 2511(b) does not require a formal bonding evaluation.

*In re Z.P., supra* at 1121 (internal citations omitted).

"The statute permitting the termination of parental rights outlines certain irreducible minimum requirements of care that parents must provide for their children, and a parent who cannot or will not meet the requirements within a reasonable time following intervention by the state, may properly be considered unfit and have…her rights terminated." *In re B.L.L.*, 787 A.2d

- 9 -

1007, 1013 (Pa.Super. 2001). This Court has said:

> There is no simple or easy definition of parental duties. Parental duty is best understood in relation to the needs of a child. A child needs love, protection, guidance, and support. These needs, physical and emotional, cannot be met by a merely passive interest in the development of the child. Thus, this [C]ourt has held that the parental obligation is a positive duty which requires affirmative performance.
>
> This affirmative duty encompasses more than a financial obligation; it requires continuing interest in the child and a genuine effort to maintain communication and association with the child.
>
> Because a child needs more than a benefactor, parental duty requires that a parent exert [herself] to take and maintain a place of importance in the child's life.
>
> Parental duty requires that the parent act affirmatively with good faith interest and effort, and not yield to every problem, in order to maintain the parent-child relationship to the best of…her ability, even in difficult circumstances. A parent must utilize all available resources to preserve the parental relationship, and must exercise reasonable firmness in resisting obstacles placed in the path of maintaining the parent-child relationship. Parental rights are not preserved by waiting for a more suitable or convenient time to perform one's parental responsibilities while others provide the child with [the child's] physical and emotional needs.

*In re B.,N.M., supra* at 855 (internal citations omitted). "[A] parent's basic constitutional right to the custody and rearing of…her child is converted, upon the failure to fulfill…her parental duties, to the child's right to have proper parenting and fulfillment of [the child's] potential in a permanent, healthy, safe environment." *Id.* at 856.

After a thorough review of the record, the briefs of the parties, the

- 10 -

applicable law, and the well-reasoned opinion of the Honorable Thomas B. Sponaugle, we conclude Mother's issues merit no relief. The Orphans' Court opinion comprehensively discusses and properly disposes of the questions presented. (*See* Orphans' Court Opinion, dated December 18, 2017, at 1-8) (finding: Mother failed to complete her objectives; initial evaluation of Mother showed she lacked capacity to parent; evaluator diagnosed Mother with host of issues including, but not limited to, parent-child relational problem, relationship distress with spouse, high expressed emotion level within family, and physical violence with spouse; evaluator described Mother as having "casual" relationship with truth; evaluator recommended for Mother to complete 26 individual counseling sessions, in addition to couples' counseling, medication management, and to work with parent educator; Mother did not complete all 26 counseling sessions; Mother did not participate in type of couples' counseling that was recommended; upon re-evaluation, evaluator decided Mother did not gain capacity to parent; Mother failed to complete objective of obtaining and using good parenting skills; Mother did not complete program with parent educator; Mother did not complete objective of financial and housing stability; Mother has struggled to maintain clean home; home was disheveled and unsanitary when CYS first became involved in case and there have been only slight improvements since that time; parent educator reported that home was dirty and unsafe; Mother struggles with boundaries and disciplining Children; Mother cannot resolve her significant

issues within reasonable time; Children are in loving and healthy foster home that is potentially permanent resource; Children have bonded with foster family; Children cannot wait indefinitely for Mother to alter her behavior and accomplish her goals; involuntary termination of Mother's parental rights to Children was proper).  Accordingly, we affirm based on the Orphans' Court opinion.

Decrees affirmed.

Judge Kunselman joins this memorandum.

Judge Ott concurs in the result.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/3/2018

IN THE COURT OF COMMON PLEAS OF LANCASTER COUNTY, PENNSYLVANIA

ORPHANS' COURT DIVISION

| | | |
|---|---|---|
| IN THE INTEREST OF: | : | SUPERIOR COURT NOS.: 1795 MDA 2017 |
| | : | 1847 MDA 2017 |
| D.S.H., a Minor & | : | Docket No.: 1751-2017 |
| B.R.H., a Minor | : | Docket No.: 1752-2017 |

APPEAL of: J.N.H., Mother, and R.A.H., Father.

**OPINION SUR APPEAL**

Procedural History

This matter was initiated on May 24, 2016 when the Lancaster County Children and Youth Social Services Agency ("Agency") petitioned and received physical custody of D.S.H. and B.R.H. (                     On May 26, 2016, R.A.H. ("Father") and J.N.H ("Mother") waived a Shelter Care Hearing without admitting any of the allegations set forth in the Agency's petition for custody. An Adjudication and Disposition hearing was held on June 16, 2016, finding the children dependent. The Court approved Child Permanency Plans ("CPP") containing objectives for both parents. On August 10, 2017, the Agency petitioned to terminate the parental rights of Father and Mother to D.S.H. and B.R.H. pursuant to 23 Pa. C.S.A. §2511(a)(1), (2), (5), and (8). A hearing on the termination petition was held on October 19, 2017, and completed on November 2, 2017, resulting in the Court issuing a decree involuntarily terminating Mother's and Father's rights to D.S.H. and B.R.H. On November 27, 2017, Father filed a Notice of Appeal to the Superior Court of Pennsylvania and Mother filed an appeal the following day.

<u>Factual History</u>

The Agency accepted Father and Mother for services on December 11, 2015 due to ongoing concerns for the condition of their home, hygiene of their children, and the sexualized behaviors and physical aggression demonstrated by D.S.H. N.T., 10/19/17 at 71. While receiving services, Father and Mother continued to have difficulty maintaining their home and proper sanitation. *Id.* at 73-75. The Agency received ongoing reports of improper supervision of the children. *Id.* at 72. On March 4, 2017, the Agency received a report that D.S.H. completely disrobed at school in front of staff and other students. *Id.* On March 9, 2017, an Agency caseworker made a scheduled visit to the residence and found extremely unsanitary conditions. *Id.* at 73. On May 23, 2016, an unannounced visit to the residence was made and once again the residence was found in poor condition. *Id.* at 74. On May 24, 2016, the agency received a report of suspected child abuse regarding D.S. H's highly sexualized and aggressive behavior and tantrums in the school setting. *Id.* at 75. It was also reported that D.S.H had not received her psychotropic medication for the past month because Mother had lost the prescription and was unable to obtain a replacement prescription. *Id.* There have been physical altercations between Father and Mother. One resulted in Mother needing stiches in her hand. *Id.* at 8,9.

<u>Issue I</u>

Whether termination of Mother's and Father's parental rights is legally appropriate when neither parent has completed their CPP in the eighteen months since the children's placement, and the children have bonded with a potentially adoptive family?

<u>Analysis</u>

The termination of parental rights is governed by 23 Pa. C.S.A. §2511. The relevant sections of that statute provide as follows:

a. **General rule.**--The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

(1) The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.

(2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

............

(5) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency for a period of at least six months, the conditions which led to the removal or placement of the child continue to exist, the parent cannot or will not remedy those conditions within a reasonable period of time, the services or assistance reasonably available to the parent are not likely to remedy the conditions which led to the removal or placement of the child within a reasonable period of time and termination of the parental rights would best serve the needs and welfare of the child.

..........

(8) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency, 12 months or more have elapsed from the date of removal or placement, the conditions which led to the removal or placement of the child

continue to exist and termination of parental rights would best serve the needs and welfare of the child.

**(b) Other considerations.--**The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa. C.S.A. §2511(a)(1), (2), (5), (8), and (b)

The party seeking the termination of parental rights bears the burden of establishing clear and convincing evidence to support the petition. *In Re C.M.S.*, 832 A.2d 457 (Pa. Super. 2003). Clear and convincing evidence is testimony that is so "clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue." *In Re Adoption of J.M.M.*, 782 A.2d 1024, 1030 (Pa. Super. 2001), *citing In Re C.S.*, 761 A.2d 847, 854-855 (Pa. Super. 2000). In a termination proceeding, the focus is on the conduct of the parent, and whether that conduct justifies a termination of parental rights. *In Re B.,N.M.*, 856 A.2d 847, 854-855 (Pa. Super. 2004). Though the Agency's petition asked for termination under Sections 2511(a)(1), (2), (5), and (8) only one of the sections is necessary for termination. *In re P.Z.*, 113 A.3d 840, 851 (Pa. Super. 2015), *citing In re B.L.W.*, 843 A.2d 380, 384 (Pa. Super. 2004) (en banc). When assessing the Agency's case for termination under 23 Pa.

C.S.A. §2511(a)(1) and (8), this Court may not consider efforts to remedy the problem initiated after the giving of notice of the filing of the termination petition. 23 Pa. C.S.A. §2511(b). "[This provision of §2511(b)] furthers the compelling state interest of providing dependent children with permanency, as it prevents unwilling or incapable parents …from continuing to delay the adoption of their children with last-minute attempts at reunification." *In re. Adoption of C.J.P.*, 114 A.3d 1046 (Pa. Super. 2015). The parents' parental obligation to their child is a "positive duty that requires active performance." *In re Z.P.*, 994 A.2d 1108, 1119 (Pa. Super. 2010) (quoting *In re B., N.M.*, 856 A.2d 847 (Pa. Super. 2004) *(citation omitted)*. A merely passive interest in the development of the child is not sufficient. *Id.*

Despite the children being in Agency custody for eighteen months, Mother has failed to complete her plan's objectives. N.T., 10/19/17 at 87. As part of Mother's mental health objective, she received an evaluation and it was determined she did not have the capacity to parent at that time. Mother was diagnosed as having a parent-child relational problem; relationship distress with spouse or intimate partner; high expressed emotion level within the family; spouse or partner violence, physical, confirmed, initial encounter. *Id.* at 25. Mother was described by the evaluator as having a casual relationship with the truth. *Id.* at 26. The evaluator requested that Mother complete at least twenty-six (26) individual, weekly, one hour therapy sessions, in addition to couples counseling, medication management, and work with a parent educator, then be reassessed for her parenting capacity. *Id.* at 75. Mother stopped attending her counseling sessions on March 16, 2017. *Id.* at 78. She has not completed the required 26 sessions. *Id.* Mother did not participate in the type of couples counseling that was recommended and the counseling was occurring infrequently. N.T.,11/2/17 at 5. Despite not completing the mental health goals set out in her

− 5 −

initial evaluation, Mother was re-evaluated to see if she had gained the capacity to parent. It was concluded she had not. N.T., 10/19/17 at 33.

Father has also failed to complete his plan's objectives. He was evaluated to see if he possessed the capacity to parent and it was determined he did not. Father was diagnosed as having a parent-child relationship problem, by history; relationship distress with spouse or intimate partner, by history; high expressed emotion level within the family, by history; spouse or partner violence, physical, confirmed, by history; child psychological abuse, suspected, by history; child neglect, confirmed, initial encounter, by history, unspecified housing or economic problem by history; intermittent explosive disorder, by history; and unspecified depressive disorder. *Id.* at 18. The evaluator recommended a minimum of twenty-six (26) weeks of counseling and couples counseling. Father was to be re-evaluated. *Id.* at 14-15. Father did very little towards completing the 26 weeks of counseling. *Id. at* 15-16. As stated above, Father participated in couples counseling but this recommendation was not considered satisfied. After re-evaluation, it was concluded Father still lacked the motivation to obtain parenting capacity. *Id.* at 20-21.

Mother and Father failed to complete their objectives of obtaining and using good parenting skills. Mother began working with the parent educator in December 2016 and Father began working with the same evaluator in March of 2017. *Id.* at 109,110. Neither parent has completed this program. They have a few more lessons in the curriculum and they have not started the practical portion of the program because parents had not progressed beyond one hour weekly supervised visits with the children. *Id. at* 109, 110, 117.

Neither parent has completed the objectives of financial and housing stability. Despite both parents reporting that they work full-time and not having paid for housing since January 2015, and receiving financial help from a church, the parents are still financially unstable. N.T., 11/2/17

— 6 —

at 39, 58. Mother testified that, after moving into an apartment in August 2017, they were unable to pay for the rent beyond the first two weeks. *Id.* at 52-53. When evicted from that apartment, the parents moved back into their foreclosed home. *Id.* at 5-6. Parents further showed their financial instability when they requested moving the location of their session with their parent educator because they did not have enough gas money to go home and then back to work later that evening. N.T., 10/19/17 at 199. The parent educator questioned the parents' ability to budget and save. *Id.* at 123.

Mother and Father have continued to struggle in maintaining a clean home. The house was disheveled and unsanitary when the Agency got involved and there have only been slight improvements since. *Id.* at 83-85. When the parent educator began working with Mother it was seven months after the children were taken into agency custody. *Id.* at 109. The parent educator reported that the house was dirty at that time: the kitchen table was sticky and had debris and food crumbs on it; cigarette butts were on the floor; the carpet and furniture were stained and not in good condition; bags filled with trash piled in the kitchen; and chip bags and bags of old food lay around the bedroom. *Id.* The parent educator spent the first month helping the parents clean the house and educator continued to work on this issue with the parents. *Id.* at 110. Her last home visit, the home continued to not be safe or livable. *Id.* at 122.

Mother and Father both had an objective to maintain commitment to their children. The mental health evaluated stated, Father seemed to lack the motivation to do what was necessary to have his children returned to him. *Id.* at 21. The caseworker observed during the visits, the parents struggle with maintaining boundaries and disciplining the children. *Id.* at 92.

The best interests of the children are served by remaining in foster care and being adopted. They have been in care for eighteen (18) months. The Court is convinced the parents will not resolve their significant issues in a reasonable amount of time. The children remain in a loving and healthy home which is a potentially permanent resource. *Id.* at 94-95. They have bonded with their foster family. *Id.* at 9. D.S.H. and B.R.H. cannot wait for an indefinite period of time for the stability and care of a permanent family in the hope that their biological parents will drastically change their behavior and accomplish their goals. The Guardian *ad litem* supports the termination of parental rights. N.T.,11/2/17 at 66.

## Conclusion

Based on the above, the Agency has sustained its burden under 23 Pa.C.S.A. §2511(a) (1), (2), (5), and (8). The Court properly terminated Mother's and Father's parental rights to D.S.H. and B.R.H and acted in the best interests of the children.

The Clerk of Courts is directed to transmit the record to the Superior Court.

Attest:

[signature]

DATED: December 18, 2017

BY THE COURT:

[signature]

THOMAS B. SPONAUGLE, JUDGE

Copies to:

    H. Allison Wright, Esquire

    Andrew E. Spade, Esquire

    Courtney J. Restemanyer, Esquire

    Cynthia L. Garman, Esquire

-8-