### In the Matter of the ADOPTION of J.M.M.

### Appeal of: D.L.M., Natural Father.

Superior Court of Pennsylvania.

Submitted June 25, 2001.
Filed Aug. 21, 2001.

D.L.M., appellant, pro se.

K.M., appellee, pro se.

Jeffrey A. Misko, Erie, for J.M.M., appellee.

James E. Beveridge, Erie, for Children and Youth Services of Erie County, appellee.

Before: DEL SOLE, President Judge, McEWEN, President Judge Emeritus and POPOVICH, J.

POPOVICH, J.

¶ 1 This is an appeal from the decree entered on January 17, 2001, in the Court of Common Pleas, Erie County, which terminated the parental rights of D.L.M. (Father) and K.M. (Mother) relative to J.M.M. pursuant to 23 Pa.C.S.A. §§ 2511(a) and (b). Upon review, we affirm.

¶ 2 The relevant factual history, as found by the trial court and supported in the record, is as follows:

J.M.M., born on April 20, 1997, is the subject of this petition. However, that was not [Erie County Office of Children and Youth's] OCY's first involvement with the [parents]. Rather, OCY's first contact occurred in February 1984, when [their] daughter ( [T.M.], born on 01/09/79) was adjudicated dependent. This was based upon findings that [Mother] physically abused [T.M.] on six occasions, and had sexually abused her once.

The [parents'] children faced hardship and danger due to their parents' failure to fulfill their roles as protectors and caregivers. Throughout their childhood, the children suffered malnourishment, poor hygiene, hindered development, occasional homelessness, lack of medical care, and exposure to domestic violence. Their home was unsafe, and they were neglected both physically and in their supervision. J.M. (born 1/25/90) suffered two arm fractures in 1992, once from being hit by a car, and again when he fell down a flight of stairs. Both occurred due to lack of parental supervision. Supervision issues led to the [parents'] residence being burned down by one of the children. In 1993, [C.M.] (born 1/31/92) had to be resuscitated by paramedics after drowning during an unattended bath.

On November 19, 1993, a finding of dependency was made as to [D.M., Jr.], (born 10/01/81), [M.M.] (born in 08/29/88), [J.M.] and [C.M.], based upon ongoing neglect poor supervision and inappropriate physical discipline. While [D.M., Jr.] was returned to his mother's care in December 1998, the other three children were never reunified with their parents. [K.M.], born December 8, 1995, was adjudicated dependent based upon prognostic evidence three weeks later, and never resided with her parents. The [parents'] parental rights to [J.M.], [C.M.] and [M.M.] were involuntarily terminated on June 6, 1996. Their rights to [K.M.] were involuntarily terminated on January 30, 1997.

[Mother] gave birth to [J.M.M.] in Ashtabula, Ohio, because she feared that the Erie OCY would detain her daughter upon delivery. Ohio child welfare authorities became involved with J.M.M. in 1998. They found that the child was often bruised. The child was ultimately returned to her mother's care.

[Mother] returned to Erie County, and on September 21, 1999, OCY received a referral regarding possible physical abuse of [J.M.M.]. It was alleged that [Mother] hit her daughter numerous times on the feet and legs. [Mother] admitted to an OCY caseworker that she hit the child out of frustration. The child suffered from a severe diaper rash, and exhibited self-injurious behavior, which the mother did not prevent. She admitted to failing to discipline [J.M.M.] or providing for her child's medical needs. [Mother] threatened to leave Pennsylvania if OCY attempted to detain [J.M.M.]. She also threatened to harm herself or OCY personnel if they tried to take her daughter.

On October 6, 1999, [J.M.M.] was detained and placed in foster care, based upon prognostic evidence. When [J.M.M.] was removed from [Mother's] care, she was unclothed and extremely dirty. Since [J.M.M.] was detained, [Mother] has made repeated threats against the OCY caseworker.

[Mother] (and [Father] when not incarcerated) did not comply with an OCY reunification plan, nor did they avail themselves of services. [Mother] has not visited [J.M.M.] in over a year, and her last address is in the state of Indiana. The OCY caseworker testified that her last contact with [Mother] was in October, when she requested a picture of [J.M.M.]. She also testified that [Mother] has been residing with a man who is a perpetrator of sexual abuse.

Currently, the child resides in a confidential foster home, and all of her needs are met. OCY filed its petitions to terminate parental rights on June 23, 2000. The trial was conducted on January 10, 2001, at which time the natural mother failed to appear. The father was present at trial.

## B. Father's Criminal History

[Father] Has a criminal history spanning twenty years. On March 12, 1978, he pleaded guilty to a charge of homicide by motor vehicle and was sentenced on April 25, 1978, to 12 to 36 months incarceration. On August 29, 1979, [Father] was arrested for burglary in Erie County. He pleaded guilty to a misdemeanor charge of receiving stolen property on January 21, 1980, and was sentenced to 4 years probation.

[Father] was again arrested on June 21, 1981, for a number of charges, including homicide by vehicle, reckless endangerment, driving under the influence of alcohol or controlled substance, and operating a motor vehicle without security. After a trial, he was found guilty of these charges, and on May 18, 1982, he was sentenced to 30 to 60 months, 12 to 24 months, 6 to 12 months, and 3 to 6 months incarceration, all to be served consecutively.

His probation was revoked on June 6, 1982, and he was resentenced to 24 to 48 months incarceration. After his release, [Father] pleaded guilty to the summary offenses of disorderly conduct and public drunkenness (1993), loitering and prowling at nighttime (1995), and an additional count of public drunkenness (1997). He was again arrested on September 20, 1996, and charged with driving under the influence of alcohol or controlled substance and fleeing or attempting to elude a police officer. Prior to trial, [Father] was arrested for driving under the influence of alcohol and related traffic offenses. He pleaded guilty to the 1996 charges, and was sentenced to 9 to 24 months and 3 to 24 months incarceration, with sentences running consecutively. Under his current sentence(s), [Father] will not be eligible for a parole hearing until May 2001, and he will "max out" in 2003. By his own admission, he has spent approximately half his life in jail.

Trial Court Adjudication, 1/17/2001, at 1–6 (citations omitted).

¶ 3 The trial court terminated the parental rights of Father pursuant to § 2511(a)(1) and Mother pursuant to §§ 2511(a)(5) and (a)(8). *See* Trial Court Adjudication, 1/17/2001, at 9, 13 and Decree *Nisi*, 1/17/2001. Father filed exceptions, which were denied by the trial court on February 2, 2001. This timely appeal followed.[1]

¶ 4 Father presents the following issues for our review:

1. Whether the trial court erred in finding Father was responsible for aggravating circumstances involving abuse or sexual misconduct indicated by record used by Mother as the perpetrator of abuse while Father was incarcerated and unaware of neglect or abuse while serving prison term?

2. Whether trial court abused its discretion in finding OCY agency in justifying its complaint against

---

1. We note that Orphans' Court Rule 7.1(e) granted review of termination matters without first filing of exceptions as per former Orphans' Court Rule 7.1. This new rule, effective January 1, 2001, states, "No exceptions shall be filed to any order in involuntary termination or adoption matters under the Adoption Act, 23 Pa.C.S. § 2501, *et seq.*" This rule eliminates post-trial practice in such cases in order to avoid delay of final determination of adoption and termination matters. *See* Pa. Orphans' Ct. Rule 7.1 Note. In the present case, Father filed exceptions, and the trial court ruled on them. We will disregard this improper procedure. Further, Father's appeal was filed within thirty days of the decree *nisi*. Therefore, even with the improper filing, this appeal is properly before this Court pursuant to Rule 7.1(e) as it is timely.

Mother without specifically addressing Father's ability to provide reasonable care toward well-being of J.M.M. while being held in confinement by the Department of Corrections?

3. Whether the trial court erred in terminating parental rights of Father prior to final outcome of post-conviction appeal before the Superior Court as part of totality of circumstances when conviction has not become final?

4. Whether termination of parental rights of Father was in the best interest of J.M.M. and supported by clear and convincing evidence in the record?

5. Whether the trial court erred by allowing Father to proceed in termination hearing without counsel?

Appellant's Brief, at 4.

¶ 5 In *In re Adoption of J.J.*, 511 Pa. 590, 593, 515 A.2d 883, 885–886 (1986), our Supreme Court stated the scope of review in termination cases is as follows:

> Our scope of review, as well as the burden of proof in involuntary termination cases, has been clearly defined and reiterated in several recent decisions by this Court. In *Matter of Adoption of G.T.M.*, 506 Pa. 44, 483 A.2d 1355 (1984), we stated:
>
> > In cases where there has been an involuntary termination of parental rights by the Orphans' Court, the scope of appellate review is limited to the determination of whether the decree of termination is supported by competent evidence. *In re Adoption of B.D.S.*, 494 Pa. 171, 177, 431 A.2d 203, 206 (1981). If the decree is adequately supported by competent evidence, and the chancellor's findings are not predicated upon capricious disbelief of competent and credible ev-

idence, the adjudication of the Orphans' Court terminating parental rights will not be disturbed on appeal. *See In re Adoption of M.M.*, 492 Pa. 457, 460, 424 A.2d 1280, 1282 (1981). It is established that, in a proceeding to involuntarily terminate parental rights, the burden of proof is upon the party seeking termination to establish by "clear and convincing" evidence the existence of grounds for doing so. *Santosky v. Kramer*, 455 U.S. 745, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982); *In re T.R.*, 502 Pa. 165, 166, 465 A.2d 642, 642–643 (1983).

> *Id.* at 46, 483 A.2d at 1356.

*See also In re Child M.*, 452 Pa.Super. 230, 681 A.2d 793, 797 (1996), *appeal denied, Child M. v. Smith,* 546 Pa. 674, 686 A.2d 1307 (1996).

◼ ¶ 6 OCY filed a petition to involuntarily terminate Father's parental rights pursuant to sections 2511(a)(1), (a)(2), (a)(5), (a)(8) and (b) of the Adoption Act, 23 Pa.C.S.A, which provide as follows:

(a) GENERAL RULE.—The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

(1) The parent by conduct continuing for a period of at least six months immediately proceeding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.

(2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, ne-

glect or refusal cannot or will not be remedied by the parent.

\* \* \*

(5) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency for a period of at least six months, the conditions which led to the removal or placement of the child continue to exist, the parent cannot or will not remedy those conditions within a reasonable period of time, the services or assistance reasonably available to the parent are not likely to remedy the conditions which led to the removal or placement of the child within a reasonable period of time and termination of the parental rights would best serve the needs and welfare of the child.

\* \* \*

(8) The child has been removed from the care of the parent by the court or under voluntary agreement with an agency, 12 months or more have elapsed from the date or removal or placement, the conditions which led to the removal or placement of the child continue to exist and termination of the parental rights would best serve the needs and welfare of the child.

(b) OTHER CONSIDERATIONS.— The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

When considering a petition to involuntarily terminate parental rights, the lower court must give primary consideration to the needs and welfare of the child. *See In re Child M.*, 681 A.2d at 797 (citation omitted).

¶ 7 Father's first issue on appeal is whether the trial court erred in finding aggravated circumstances in that Father was responsible for the abuse or sexual misconduct of Mother while he was incarcerated.[2]

¶ 8 We have reviewed the trial court's adjudication and have found no accusation by the trial court that Father was responsible for Mother's sexual misconduct or any indication that the trial court used Mother's abuse or sexual misconduct as an aggravating circumstance against Father in terminating his parental rights. For this reason, we will not address this issue alleging error in Father's misconstruction of the trial court's adjudication.

¶ 9 Father's second and fourth issues on appeal are whether the trial court abused its discretion in finding that OCY justified its petition for termination of parental rights against Mother without reasonably addressing Father's ability to provide reasonable care even though he is incarcerated and that OCY justified its petition for termination of Father's parental rights with clear and convincing evidence.

¶ 10 First, we note that the issue as written involves trial court error as to the

---

**2.** We note that Father is proceeding *pro se* in his appeal.

termination of Mother's parental rights. However, Mother is not a party to this appeal, so we could dismiss this issue on that basis alone. However, in the interest of fairness, we will examine the second part of Father's issue, *i.e.*, whether the trial court addressed Father's ability to provide reasonable care for J.M.M. while he was incarcerated.

¶ 11 Regarding the application of Section 2511(a)(1), our Supreme Court has stated:

> To satisfy Section 2511(a)(1), the moving party must produce clear and convincing evidence of conduct sustained for at least the six months prior to the filing of the termination petition, which reveals a settled intent to relinquish parental claim to a child or a refusal or failure to perform parental duties. The standard of clear and convincing evidence is defined as testimony that is so "clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue." It is well-established that a court must examine the individual circumstances of each and every case and consider all explanations offered by the parent to determine if the evidence in light of the totality of the circumstances clearly warrants the involuntary termination.

*In re C.S.*, 761 A.2d 1197, 1201 (Pa.Super.2000) (citation omitted).

¶ 12 Further, Section 2511 does not require that the parent demonstrate both a settled purpose of relinquishing parental claim to a child *and* refusal or failure to perform parental duties. Accordingly, parental rights may be terminated pursuant to Section 2511(a)(1) if the parent either demonstrates a settled purpose of relinquishing parental claim to a child *or* fails to perform parental duties. *See In re C.S.*, 761 A.2d at 1201. Incarceration alone does not automatically provide grounds for the termination of parental rights, nor does it suspend a parent's responsibilities for their children. *See In re D.J.S.*, 737 A.2d 283, 286–87 (Pa.Super.1999).

¶ 13 The trial court noted that Father has a significant criminal history and that he has been incarcerated for nearly all of J.M.M.'s life. She was born in April of 1997, and Father has been incarcerated three times between her birth and his last sentencing in November of 1997. At the time of the termination hearing, Father was incarcerated. At this hearing, he presented evidence that he participated in the prison's rehabilitative and education services. However, the trial court found that Father failed to perform the parental duties he owes to J.M.M. He has not seen her in more than two years and has expended minimal effort attempting to create or maintain a parent-child relationship. Father stated that he had mailed her two cards. This contact is not enough to preserve his parental rights. J.M.M. has been in placement for over twenty-seven months. Given Father's failure to perform parental duties and given that he has been unable to remain out of jail for any period of time, we agree with the trial court in terminating his parental rights. The termination was supported by clear and convincing evidence in the record.

¶ 14 Father's third and fifth allegations assert that the trial court erred in terminating his parental rights when he did not have assistance of counsel.[3] How-

---

**3.** Father failed to address his third issue regarding his termination of his parental rights when there is collateral relief petition pend-

ing. Instead, he alleges that the trial court erred because he did not have counsel at the termination hearing. For this reason, we

ever, after reviewing Father's brief, we find that he has not made a colorable argument on appeal. Therefore, we find that this argument is waived, and we will not address this issue. *Cf. Commonwealth v. Irby,* 700 A.2d 463, 464 (Pa.Super.1997) (holding that arguments which are not sufficiently developed are waived).

¶ 15 In conclusion, we find that the trial court did not err in terminating Father's parental rights relative to J.M.M. because Father has failed to perform parental duties as evidenced by his lack of contact with his daughter over the previous twenty-seven months.

¶ 16 Decree affirmed.

compiled his third and fifth issues and ad-       dressed them contemporaneously.