J-S56031-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN RE: INVOLUNTARY TERMINATION OF PARENTAL RIGHTS TO B.J.V., A MINOR | : : : : : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: J.V., MOTHER | : | No. 172 MDA 2018 |

Appeal from the Decree Entered September 28, 2017
in the Court of Common Pleas of Schuylkill County
Orphans' Court at No(s):  A63-184A-17

| | | |
|---|---|---|
| IN RE: INVOLUNTARY TERMINATION OF PARENTAL RIGHTS TO J.M.V., A MINOR | : : : : : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: J.V., MOTHER | : | No. 186 MDA 2018 |

Appeal from the Decree September 28, 2017
in the Court of Common Pleas of Schuylkill County
Orphans' Court at No(s):  A-63-181A-17

| IN RE: INVOLUNTARY TERMINATION OF PARENTAL RIGHTS TO A.M.V., A MINOR | : : : : : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|---|
| APPEAL OF: J.V., MOTHER | : | No. 187 MDA 2018 |

Appeal from the Decree September 28, 2017
in the Court of Common Pleas of Schuylkill County
Orphans' Court at No(s):  A-63-182A-17

| IN RE: INVOLUNTARY TERMINATION OF PARENTAL RIGHTS TO L.A.V., A MINOR | : : : : : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|---|
| APPEAL OF: J.V., MOTHER | : | No. 188 MDA 2018 |

Appeal from the Decree Entered September 28, 2017
in the Court of Common Pleas of Schuylkill County
Orphans' Court at No(s):  A63-183A-17

BEFORE:  GANTMAN, P.J., KUNSELMAN, J., and MUSMANNO, J.

MEMORANDUM BY MUSMANNO, J.:                    **FILED DECEMBER 26, 2018**

J.V. ("Mother") appeals from the Decrees granting the Petitions filed by the Schuylkill County Children and Youth Services ("CYS"), and involuntarily terminating Mother's parental rights to her sons, B.J.V. (born September 2007) and A.M.V. (born May 2016), and her daughters, J.M.V. (born April 2010) and L.A.V. (born April 2012) (collectively "the Children"), pursuant to

- 2 -

the Adoption Act, 23 Pa.C.S.A. § 2511.[1]  Counsel for Mother has filed a Motion

to Withdraw as counsel, and a brief pursuant to *Anders v. California*, 386

U.S. 738 (1967).  We grant counsel's Motion to Withdraw, and affirm the

Decrees entered by the Orphans' Court.

The Orphans' Court summarized the relevant history underlying the

instant appeal as follows:

> [CYS] began providing services to the family in August 2013
> with regards to unstable housing, lack of parenting skills, drug and
> alcohol use, and lack of basic needs for [C]hildren.  On October
> 27, 2014, [CYS] discovered that the home was in poor condition,
> with piles of soiled clothing, trash, broken glass, open beverage
> containers filled with urine, a urine[-]soaked mattress, and [J.M.V.
> and L.A.V.] had medical issues that were not being treated
> properly.  At that time, [CYS] obtained custody of [J.M.V., L.A.V.,
> and B.J.V.] only because [A.M.V.] was not born yet.  [CYS]
> obtained custody of [A.M.V.] immediately after his birth.  All [of
> the] Children were adjudicated dependent, placed together with
> the same foster parents[,] and have remained in [CYS's] care until
> the present.

Orphans' Court Opinion, 1/30/18, at 1-2.

On March 13, 2017, CYS filed Petitions to involuntarily terminate

Mother's parental rights to the Children.  On September 28, 2017, the

Orphans' Court entered Decrees involuntarily terminating Mother's parental

rights to the Children pursuant to 23 Pa.C.S.A. § 2511(a)(1), (2), (5), (8),

---

[1] The parental rights of the Children's father, W.M.V. ("Father"), also were
terminated.  Father is not a party to this appeal, nor has Father filed his own
appeal.

and (b). Mother, acting *pro se*, filed timely appeals of the Decrees. Mother's counsel subsequently withdrew from representation. On March 28, 2018, the Orphans' Court appointed substitute counsel for Mother.[2] On April 30, 2018, Mother's new counsel filed an "Advocate's Statement," indicating that after a thorough review of the entire record, counsel could not identify any issues of arguable merit, and that counsel intended to file an "Advocate's Brief" in this Court. *See* Pa.R.A.P. 1925(c)(4) (providing that "in a criminal case, counsel may file of record and serve on the judge a statement of intent to file a brief pursuant to **Anders** …, in lieu of filing a Statement."); *see also In re J.T.*, 983 A.2d 771, 774 (Pa. Super. 2009) (applying the **Anders** procedure and Pa.R.A.P. 1925(c)(4) to appeals involving the termination of parental rights).

Mother's counsel subsequently filed what appears to be an **Anders** brief in this Court, suggesting that the Orphans' Court did not err by involuntarily terminating Mother's parental rights, and thereafter filed her Motion to Withdraw as counsel. As this Court has explained,

> [b]efore reaching the merits of [an] appeal, we must first address the propriety of counsel's petition to withdraw and **Anders** brief. The **Anders** procedure, whereby court-appointed counsel may seek to withdraw if he or she concludes that an appeal is wholly frivolous, initially applied to direct appeals in criminal matters….

---

[2] On January 18, 2018, the Orphans' Court permitted Mother's prior counsel to withdraw from representation. On appeal, however, this Court remanded to the Orphans' Court for an on-the-record determination of whether Mother wished to proceed *pro se*, or for the appointment of new counsel for Mother. *See In re Adoption of C.A.S.*, 166 A.3d 353, 356 (Pa. Super. 2017) (recognizing that "[p]arents in involuntary termination proceedings have a constitutionally-protected right to counsel.").

*In re J.D.H.*, 171 A.3d 903, 905 (Pa. Super. 2017).

To withdraw from representation, pursuant to ***Commonwealth v. Millisock***, 873 A.2d 748 (Pa. Super. 2005) and its progeny, counsel must

> 1) petition the court for leave to withdraw stating that, after making a conscientious examination of the record, counsel has determined that the appeal would be frivolous; 2) furnish a copy of the [Anders] brief to the [appellant]; and 3) advise the [appellant] that he or she has the right to retain private counsel or raise additional arguments that the [appellant] deems worthy of the court's attention.

***Commonwealth v. Cartrette***, 83 A.3d 1030, 1032 (Pa. Super. 2013) (*en banc*). We further review an ***Anders*** brief for compliance with the requirements set forth in ***Commonwealth v. Santiago***, 978 A.2d 349 (Pa. 2009):

> [I]n the ***Anders*** brief that accompanies court-appointed counsel's petition to withdraw, counsel must: (1) provide a summary of the procedural history and facts, with citations to the record; (2) refer to anything in the record that counsel believes arguably supports the appeal; (3) set forth counsel's conclusion that the appeal is frivolous; and (4) state counsel's reasons for concluding that the appeal is frivolous. Counsel should articulate the relevant facts of record, controlling case law, and/or statutes on point that have led to the conclusion that the appeal is frivolous.

*Id.* at 361. "Once counsel has satisfied the above requirements, it is then this Court's duty to conduct its own review of the trial court's proceedings and render an independent judgment as to whether the appeal is, in fact, wholly frivolous." ***Commonwealth v. Goodwin***, 928 A.2d 287, 291 (Pa. Super. 2007) (*en banc*).

Counsel for Mother has now complied with *Anders'* requirements. Counsel has filed a Motion to Withdraw as counsel, asserting that she has made a conscientious review of the record and determined the appeal would be wholly frivolous. Motion to Withdraw, ¶ 4. Counsel also has filed an *Anders* brief that complies with the requirements set forth in *Santiago*. Finally, counsel has attached to her Motion to Withdraw the letter she sent to Mother advising her of her rights, and enclosing a copy of the *Anders* brief. Thus, we will proceed to address the merits of the issues raised in the *Anders* brief.

In her *Anders* Brief, counsel for Mother states that the Orphans' Court did not err or abuse its discretion in terminating Mother's parental rights under Section 2511(a)(1), (2), (5) and (8). *Anders* Brief at 14-21. We will confine our review to the termination of Mother's parental rights pursuant to subsection 2511(a)(2).[3]

As our Supreme Court has explained,

> [t]he standard of review in termination of parental rights cases requires appellate courts to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. A decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. The trial court's decision, however, should not be reversed merely because

---

[3] "Parental rights may be involuntarily terminated where any one subsection of Section 2511(a) is satisfied, along with consideration of the subsection 2511(b) provisions." *In re Z.P.*, 994 A.2d 1108, 1117 (Pa. Super. 2010).

the record would support a different result. We have previously emphasized our deference to trial courts that often have first-hand observations of the parties spanning multiple hearings.

*In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013) (citations and quotation marks omitted).

Section 2511 directs the court to engage in a bifurcated process:

Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only if the court determines that the parent's conduct warrants termination of [her] ... parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child.

*In re L.M.*, 924 A.2d 505, 511 (Pa. Super. 2007) (internal citations omitted).

Pursuant to subsection (a)(2), parental rights may be terminated, after the filing of a petition, when

[t]he repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

23 Pa.C.S.A. § 2511(a)(2). If the court finds subsection (a)(2) is satisfied, it must then consider "the developmental, physical and emotional needs and welfare of the child" to determine if termination of parental rights is in the child's best interest. 23 Pa.C.S.A. § 2511(b).

Here, the Orphans' Court determined that clear and convincing evidence existed to support an involuntary termination of Mother's parental rights under

23 Pa.C.S.A. § 2511(a)(2). **See** Orphans' Court Opinion, 1/30/18, at 5-8. In addition, the Orphans' Court determined that termination of parental rights is in Children's best interests, pursuant to subsection 2511(b). **See id.** at 10-11. The Orphans' Court's findings are supported by the clear and convincing evidence of record, and its legal conclusions are sound. We therefore affirm on the basis of the Orphans' Court's Opinion with regard to the termination of Mother's parental rights pursuant to subsection (a)(2) and (b). **See id.** at 5-8, 10-11.

Motion to Withdraw granted. Decrees affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 12/26/2018

## COURT OF COMMON PLEAS OF SCHUYLKILL COUNTY, PENNSYLVANIA
### ORPHANS' COURT DIVISION

| | |
|---|---|
| In Re:<br>J. M. V.<br>A. M. V.<br>L. A. V. , and<br>B. J. V.<br>Minors | No. A63-181A-17<br>No. A63-182A-17<br>No. A63-183A-17<br>No. A63-184A-17<br><br>Contested Involuntary Termination |

Counsel of Record: Karen E. Rismiller, Esquire – for Petitioner
Gino O. DiNicola, Esquire – for the Natural Mother
Shelby G. Hostetter, Esquire – for the Natural Father
Thomas J. Pellish, Esquire – for the Minor Children
Thomas J. Campion, Jr., Esquire – Child Advocate

## OPINION OF COURT

BALDWIN, P.J.

Schuylkill County Children & Youth Services (hereinafter "Agency") filed a petition to involuntarily terminate the parental rights of J. V. , (hereinafter mother, and W. M. V. (hereinafter "V." natural father, to their minor children, J. M. V. born April 2010, A. M. V. born May , 2016, L. A. V. born April , 2012, and B. J. V. born September 2007.

The Agency began providing services to the family in August 2013 with regards to unstable housing, lack of parenting skills, drug and alcohol use, and lack of basic needs for the children. On October 27, 2014, the Agency discovered that the home was in poor condition with piles of soiled clothing, trash, broken glass, open beverage containers filled with urine, a urine soaked mattress, and J and L had medical issues that were not being treated properly. At that time, the Agency obtained custody of J , L and B only because A was not born yet. The Agency obtained custody of A immediately after his birth. All four children were

adjudicated dependent, placed together with the same foster parents and have remained in Agency care until the present.

The termination of parental rights is governed by statute. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies at least one of the nine statutory grounds delineated in Section 2511(a) of the Pennsylvania Adoption Act, 23 Pa. C.S. §2101 *et seq.* See **In re I.J.**, 972 A.2d 5, 9 (Pa.Super. 2009). If the court determines that the parent's conduct warrants termination, it must then engage in an analysis of the best interests of the child pursuant to Section 2511(b) and take into consideration the developmental, physical, and emotional needs of the child. **Id.**

The termination of parental rights carries with it a constitutional significance because of the importance of the rights involved. **In re K.B.**, 763 A.2d 436 (Pa.Super. 2000). In order to support the termination of parental rights, clear and convincing evidence must be presented to enable the trier of fact to come to a clear conviction, without hesitancy, of the truth of the facts at issue. **In re Adoption of Atencio**, 650 A.2d 1064 (Pa. 1994).

In this case, the Agency sought the involuntary termination of Mother's and Father's parental rights pursuant to 23 Pa.C.S. §2511 (a)(1), (2), (5), and (8) and Section 2511(b). Those sections provide as follows:

> The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties. **23 Pa.C.S. §2511(a)(1); and**

> The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent. **23 Pa.C.S. §2511(a)(2); and**

> The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency for a period of at least six

2

months, the conditions which led to the removal or placement of the child continue to exist, the parent cannot or will not remedy those conditions within a reasonable period of time, the services or assistance reasonably available to the parent are not likely to remedy the conditions which led to the removal or placement of the child within a reasonable period of time and termination of the parental rights would best serve the needs and welfare of the child. **23 Pa.C.S.A. §2511(a)(5)**; and

The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency, 12 months or more have elapsed from the date of removal or placement, the conditions which led to the removal or placement of the child continue to exist and termination of parental rights would best serve the needs and welfare of the child. **23 Pa.C.S.A. §2511(a)(8)**.

In addition, when the court finds that the grounds have been established for terminating parental rights, then the court must engage in additional analysis as required by Section 2511(b) which provides as follows:

The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child . . . . **23 Pa.C.S.A §2511(b)**.

Pursuant to Section 2511(a)(1) parental rights may be terminated if, for a period of at least six months, a parent either demonstrates a settled purpose of relinquishing a parental claim to a child or refuses or fails to perform parental duties. **In the Matter of the Adoption of J.M.M.**, 782 A.2d 1024, 1030 (Pa.Super. 2001)). However, a failure to have contact with the child for six months preceding the filing of the termination petition will not automatically forfeit a parent's rights and the entire background of the case, including the explanations offered by the parent, should be considered. **In re Z.P.**, 994 A.2d 1108, 1117 (Pa.Super. 2010).

The parental duties required by the language of Section 2511(a)(1) have been defined as "many sided." **In re Adoption of M.J.H.**, 501 A.2d 648, 652 (Pa.Super. 1985). Not only is there a duty to love, to protect, and to support one's child; there is also a duty to maintain communication and association with that child. **Id.** Further,

3

being a parent is more than a passive state of mind, it is "an active occupation, calling for constant affirmative demonstration" of love, protection, and concern. Id. A parent must "exert himself to take and maintain a place of importance in the child's life." Id. (Citations omitted).

In order to satisfy the requirements of Section 2511(a)(2), the Agency must produce clear and convincing evidence of the following: (1) the parent's repeated and continuing incapacity, abuse, neglect or refusal; (2) that such incapacity, abuse, neglect or refusal has caused the child to be without the essential parental care, control or subsistence necessary for his physical or mental well-being; and (3) that the causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied. In re Adoption of M.E.P., 825 A.2d 1266, 1272 (Pa.Super. 2003) (citation omitted). The failure or refusal to perform parental duties should be measured "in light of what would be expected of an individual in similar circumstances" to the parent under examination. Lookabill v. Moreland, 485 A.2d 1204, 1206 (Pa.Super. 1984). The totality of the circumstances surrounding the parent's failure to perform parental duties must be considered, including the effect of certain barriers on the contact between the parent and the child. In re Z.P., *supra*. However, a "child's life simply cannot be put on hold in the hope that the parent will summon the ability to handle the responsibilities of parenting." Id. A parent who cannot, or will not, meet the minimum requirements of care within a reasonable time may properly be considered unfit and have his parental rights terminated. Id.

The grounds for termination under Section 2511(a)(5) include: (1) the child has been removed from the care of the parent for at least 6 months; (2) the conditions which led to the removal continue to exist; (3) the parent cannot or will not, within a reasonable time, remedy the conditions; (4) services made available to the parent by the Agency are not likely to remedy the conditions within a reasonable period of time; and

4

(5) termination of parental rights would best serve the needs and welfare of the child. In re Adoption of B.J.R., 579 A.2d 906 (Pa.Super. 1990).

Lastly, the termination of parental rights pursuant to Section 2511(a)(8) requires evidence that: (1) the child has been removed from parental care for 12 months or more from the date of removal; (2) the conditions which led to the removal or placement of the child continue to exist; and (3) the termination of parental rights would best serve the needs and welfare of the child. In re Adoption of M.E.P., *supra.* at 1275 -76. Termination under this section does not require the court to evaluate a parent's willingness or ability to remedy the conditions that initially caused placement or to evaluate the availability or efficacy of the Agency's services. In re J.T. and R.T., 817 A.2d 505, 509 (Pa.Super. 2003). The analysis required by Section 2511 (a)(8) requires an inquiry as to whether the conditions that led to the removal of the child have been remedied and, thus, whether reunification of the parent and child is imminent at the time of the hearing. In re I.J., *supra.* at 11.

The Agency is required to make reasonable efforts to promote the reunification of a child with the natural parents. In re I.J., *supra.* However, this obligation is not indefinite, and the Agency must respect a child's right to a stable, safe and healthy environment, so that when reasonable efforts at reunification have failed, the Agency must work toward terminating the parental rights and placing the child with adoptive parents. Id.

The Agency first began providing services to Mother and Father in 2013. They were never married but have been together for many years and were together the entire time of the Agency's involvement. Their Family Service Plan (FSP) goals and action steps have remained the same and are as follows: 1) assessing drug and alcohol problems by completing an evaluation, pursuing and successfully completing any recommended treatment, submitting to random drug screen tests, maintaining recovery and sobriety, providing prescription bottles to the Agency, being honest about drug use

5

and needs, taking responsibility for drug use, understanding the effect of drug use on the family, and allowing the Agency to assess the home for drug activity; 2) being available and participating in Agency services by allowing access to the home, cooperating with announced and unannounced visits, keeping the Agency informed about current addresses and phone numbers, and signing any releases for information; 3) improving and maintaining a relationship with the children and developing and practicing consistent parenting, attending visits and medical appointments on time, and meeting the children's basic needs, including food, clothing, shelter and hygiene; and 4) completing a mental health evaluation and recommended treatment.

Mother scheduled five drug and alcohol evaluations between October 2014 and September 2016. She was discharged unsuccessfully from the first program, did not complete the evaluation with the second program, was discharged unsuccessfully from the third program for failure to show up, falsely reported that she attended the fourth program when she did not, and was unsuccessfully discharged from the fifth program. The initial recommended treatments were intensive outpatient treatment which she never pursued.

The Agency administered many random drug tests to Mother and they were all positive for illegal substances – either barbiturates, opiates, methamphetamine, amphetamines, or cocaine. Her drug activity resulted in criminal charges in 2014 and she was incarcerated for 24 days due to a county-wide drug bust.

Mother failed to meet with the agency when requested and often moved around the county. She never allowed the Agency access to her residences and often only reported the name of the street and not the specific number. Her telephone number was constantly changing and it took her awhile to inform the Agency of her new number. Mother was not consistent with attending supervised visits and more often failed to show or showed up late. In relating why she was late, she had many excuses

6

*Father* was incarcerated from November 19, 2014, through December 23, 2014, in the same drug sweep as Velousky, and is presently incarcerated in Berks County Prison due to the overflow issue at Schuylkill County Prison since August 18, 2016, serving a 9 to 23 month term. He did provide proof that he participated in stress and anger management class and attended four sessions of drug and alcohol treatment while incarcerated in the Berks County Prison. *Father* said he is on a waiting list for further drug and alcohol treatment. While in prison, he sent no cards or letters to the children and did not call them. He admitted he has not talked to his children in "like a year." [Depo., p. 33].

*Father* admitted that he did not "have anything lined up" as far as employment for the future, but with his certifications to drive heavy equipment, and welding background, he claimed it will not be difficult to find work. [Depo., p. 22]. *Father* was not sure which certifications were still in effect but was sure that finding a job would not be difficult. He testified that he "had no clue" as to when he expected to be released from prison and was "up for parole" three months ago but was denied because of the address he offered. [Depo., p. 30]. One of the addresses he offered was a homeless shelter.

The Agency has attempted to work with *Father* for more than three years and he has failed to take any substantive effort to remedy the conditions that initially caused his children to be removed from his care. He has no concrete plans to address the Agency's concerns or to act in a manner that would remedy the situation so that he would be in a position to take care of four children, who have been waiting a long time for him to get his act together. *Father* is not sure when he will be released from prison and has no job lined up but is sure that he could get a place to live with *Father* and his four children when he gets a couple of paychecks.

In deciding the sensitive question of the Involuntary termination of parental rights, we are mindful of the irreversible nature and the serious emotional impact which necessarily follow such an action. **In re Adoption of Ostrowski, 471 A.2d 541**

10

(Pa.Super. 1984). It is well-established that the court must engage in a bifurcated process in terminating parental rights. **In re D.W.**, 856 A.2d 1231 (Pa.Super. 2004). Initially, the court must focus on the conduct of the parent, and only after determining that the parent's conduct warrants the termination of parental rights does the court engage in the second part of the analysis, that is, determining the needs and welfare of the child under the standard of the best interests of the child. **In re C.L.G.**, 56 A.2d 999 (Pa.Super. 2008). A major aspect of the needs and welfare analysis concerns the "nature and status of the emotional bond between parent and child." **In re Adoption of R.J.S.**, *supra*, at 509 (citing In re C.M.S., 884 A.2d 1284, 1287 (Pa.Super. 2005)). We must be careful not to destroy something necessary and beneficial to the child. **In re Z.P.**, *supra*.

All four children are placed in the same foster home. B.J.V. will be in fourth grade, J. M.V. will be in second, L.A.V. in kindergarten and A. M V. is too young for school. They have a wonderful sibling relationship and are doing well in the home. They participate in sports and enjoy family vacations and outings.

The foster parents have addressed their developmental issues and the children are up to date on all immunizations and medical and dental visits. L A V had been "nonverbal" when placed at age two but she has completed the early intervention program and is now doing very well. [N.T., p. 93]. The foster parents are interested in adopting JMV, BJV, LAV and AMV.

We conclude that there is no evidence showing that the minor children's needs and welfare are better served by continuing _Mother's and Father's_ parental rights. Instead, the termination of the parental rights of the natural mother, J V , and the natural father, W M V , is in the best interest, needs, and welfare of the Children,

Accordingly, we enter the following:

11